1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF CALIFORNIA

7                                    )
                                     )     1:02-cv-05200  OWW DLB
8     FLAGSHIP WEST, LLC; MARVIN G.  )
      REICHE; and KATHLEEN REICHE,   )     MEMORANDUM DECISION AND
9                                    )     ORDER RE POST-TRIAL
                    Plaintiffs,      )     ELECTION OF REMEDIES
10                                   )
           v.                        )
11                                   )
      EXCEL REALTY PARTNERS, L.P.; NEW )
12    PLAN EXCEL REALTY TRUST, INC., )
                                     )
13                                   )
                    Defendants.      )
14                                   )
      _____)

15

16

17              I.    **INTRODUCTION**

18

19         Plaintiffs FLAGSHIP WEST, LLC; MARVIN G. REICHE; and

20    KATHLEEN REICHE ("Plaintiffs"), following a jury trial and

21    verdicts in their favor, elect to rescind their lease with

22    Defendant EXCEL REALTY PARTNERS, L.P. ("Defendant"), and to be

23    awarded restitution and consequential damages in lieu of the

24    contract damages that were awarded at that jury trial.  Defendant

25    opposes the election and argues that Plaintiffs are not entitled

26    to rescission, and in the alternative that if rescission is

27    effected, Plaintiffs are only entitled to restitution and not to

28    consequential damages.

                                1

1    Plaintiffs also argue that if they are granted rescission,
2  sufficient evidence was adduced at trial for the court to
3  determine the amount of damages.  Defendant argues first that the
4  Plaintiffs' measure of restitution damages is improper, and
5  second, that there is insufficient record evidence to determine
6  the amount of damages.  Defendant contends that an evidentiary
7  hearing should be held and that the court sitting in equity
8  determine the damages amount after the appropriate discovery is
9  conducted and expert damages reports are submitted.

10

11                      **II.   <u>BACKGROUND</u>**

12

13       **A.   <u>Procedural History.</u>**

14    This case arises out of a dispute relating to a 15-year
15  ground lease ("Lease") between the parties.  The Lease provided
16  that Plaintiffs would have the "exclusive right to operate a self
17  service buffet style family restaurant within [a shopping complex
18  owned by Defendants]."  (*Id.* at 2 (quoting Doc. 302, Ex. A, Lease
19  § 6.3))  The Lease commenced on July 16, 1998.  (*Id.* at 1)
20  Marvin and Kathleen Reiche are the only members of Flagship.
21  Marvin Reiche is Flagship's manager.  To construct the restaurant
22  on the leased real property, Flagship borrowed approximately $2
23  million from The Money Store for a twenty-five year term.  This
24  loan was secured by a deed of trust on Flagship's leasehold
25  interest in the real property.  The Reiches also executed written
26  personal guarantees of the loan.
27    On June 10, 1999, Plaintiffs opened their restaurant.
28  Approximately one year later, a buffet restaurant serving Chinese

food opened in Defendants' shopping complex in a location
directly across from restaurant.  Plaintiffs contend that the
Defendants breached the exclusive use provision of the Lease
(§ 6.3) by allowing the operation of the other buffet restaurant
and that the breach caused the Plaintiffs' restaurant to become
unprofitable, leading to its closure on April 1, 2001.  (*See id.*)

Plaintiffs filed suit alleging breach of contract, fraud,
and negligent misrepresentation, requesting contract damages and
alternatively rescission damages.  The case was tried to a jury.
The trial commenced on November 12, 2003 and verdicts were
returned on December 3, 2003.  The general verdict with
interrogatories found in favor of the Plaintiffs and awarded them
$1,480,740.00 in contract damages.[1]  (Doc. 279, Minutes of

---

[1] The verdict form stated in pertinent part:

Question 5: Have Plaintiffs proved by a
preponderance of the evidence that it was
reasonably certain that the [Restaurant] in
Modesto would have earned net profits?

Yes _X__  No ___

***

Question 6:  If your answer to Question 5 is
"yes," what is the total amount of damages
Plaintiffs proved by a preponderance of the
evidence were caused by Defendant's breach of
contract?

$1,502,00.00

***

Question 7:  Have Defendants proved by a
preponderance of the evidence that Plaintiffs
failed to take reasonable steps to mitigate

**3**

Dec. 3, 2003, 10th Day of Jury Trial)  The entry of judgment was deferred in order to allow Plaintiffs to elect between the remedies of contract damages or rescission.  (*See* Doc. 327, December 3, 2004 Transcript 1683:6-10)

Plaintiffs elected rescission in a brief filed December 29, 2003 (Doc. 301), after which a series of nine (9) briefs were filed by the parties and two oral arguments were heard.  (Doc. 353, November 2004 Order 3-4 (recounting procedural history of post-trial filings))

This memorandum decision is the second of two relating to Plaintiffs' post-trial election of rescission and rescission damages.  The first order (Doc. 353), issued on November 19, 2004 ("November 2004 Order"), addressed a number of issues relating to Plaintiffs' election of remedies, all of which were hotly contested by the parties.  The November 2004 Order scheduled another hearing for December 13, 2004 to address unanswered questions.  At the hearing, which was later rescheduled and held on February 7, 2005, the parties were given permission to file one additional brief each to address the open questions.  On

or reduce the damages caused by Defendants' breach of the lease?

Yes ___   No _X_

***

Question 8:  What amount of Plaintiffs' damages (your answer to Question 6) could have been avoided if Plaintiffs had undertaken reasonable efforts to mitigate or reduce their damages?

$21,260.00

**4**

March 14, 2005, Plaintiffs filed a brief titled "Plaintiffs' Post-Trial Brief Requesting Further Proceedings." (Doc. 358, "Pls.' Mem.")  On April 5, 2005, Defendants filed opposition. (Doc. 360, "Def.'s Opp.")

The sole issues now before the court for decision are:

(1)   Whether rescission is warranted in this case and the effect of the jury's specific finding of a material breach of the exclusive use provision (§ 6.3) of the Lease.

(2)   If rescission is warranted, what categories of damages may be awarded.

(3)   In light of the categories of damages that are allowed, whether sufficient evidence exists in the record to determine the exact amount of damages to be awarded or whether additional proceedings are required, including either a jury trial or an evidentiary hearing before the court sitting in equity on the issue of the damages amount.

(*See* Doc. 353, November 2004 Order 36-37, 53-54)

The issues presented as to the effect of the jury's verdicts and entitlement to rescission are questions of law.


**B.    Categories and Amounts of Damages Claimed by Plaintiffs.**

Plaintiffs assert that their rescission damages consist of two main categories of damages, restitution and what they term "special" damages.  Plaintiffs first assert they are entitled to restitution damages, including rent and costs of improvements to

**5**

Defendants' real property.  Plaintiffs also assert they are

entitled to "special," or consequential, damages, including costs

of opening, running, and closing the restaurant, interest on both

the initial construction loan and The Money Store loan, and

prejudgment interest.  These amounts are set forth in Exhibits A

and B to Plaintiffs' brief (Doc. 358).  The amounts in Exhibits A

and B are not consistent in all respects.  Plaintiffs concede

Defendant is entitled to some off-set.  Plaintiffs contend the

off-set consists of money they received from selling the

restaurant equipment at auction ($11,260) and for rent received

by Plaintiffs from a sub-tenant ($10,000).

### III.   ANALYSIS

#### A.   Choice of Law.

The parties have agreed that in this diversity action the

substantive law of the state of California provides the rule of

decision.

#### B.   Whether Rescission of the Lease is Warranted.

The sub-issues to be decided are:  (1) whether rescission is

warranted based on the jury's finding of a material breach;

(2) Defendant's argument that the court committed "prejudicial

error" in holding that Defendant is estopped from asserting the

Lease's anti-rescission provision (§ 4.5) as a bar to rescission;

(3) Defendant's argument that Plaintiffs are not entitled to

rescission because they have an adequate remedy at law.

//

### 1.   Whether Rescission Is Warranted Based on the Jury's Finding of a Material Breach.

California Civil Code § 1689(b) provides that "[a] party to a contract may rescind the contract," if, among other things, the consideration fails in one of three ways:

*     *     *

(2)   If the consideration for the obligation of the rescinding party fails, in whole or in part, **through the fault** of the party as to whom he rescinds.

(3)   If the consideration for the obligation of the rescinding party **becomes entirely void** from any cause.

(4)   If the consideration for the obligation of the rescinding party, before it is rendered to him, **fails in a material respect** from any cause.

*     *     *

Cal. Civ. Code § 1689(b) (emphasis added).

Read together, these provisions are interpreted to mean that a contract may be rescinded if there is either a total failure of consideration or a partial but material failure of consideration. *North Pac. S. S. Co. v. Terminal. Inv. Co.*, 43 Cal. App. 182, 188 (1919); *Newcomb & Co., Ltd. v. Sainte Claire Realty Co.*, 55 Cal. App. 2d 437, 443-44 (1942); *Medico-Dental Bldg Co. of Los Angeles v. Horton & Converse*, 21 Cal. 2d 411, 433-34 (1942); *Wilson v. Corrugated Kraft Containers*, 117 Cal. App. 2d 691, 697 (1953); *Crofoot Lumber, Inc. v. Thompson*, 163 Cal. App. 2d 324, 332-33 (1958) (citing Corbin on Contracts, § 1104, p. 464); *Calabrese v. Rexall Drug and Chem. Co.*, 218 Cal. App. 2d 774, 782 (1963); *Nelson v. Sperling*, 270 Cal. App. 2d 194, 195 (1969); *Wyler v. Feuer*, 85 Cal. App. 3d 392, 403-4 (1979); *FDIC v. Air Florida*

1  *Sys., Inc.*, 822 F.2d 833, 839-40 (9th Cir. 1987); *Bradley v.*

2  *Chiron Corp.*, 136 F.3d 1317, 1327 (1998) (applying California

3  law).

4        Rescission is warranted if there has been a material breach.

5  A breach resulting in a partial failure of consideration is

6  material if the breach goes to the essence of the contract.

7  *FDIC*, 822 F.2d at 840 ("[A] partial failure of consideration

8  justifies rescission only if the failure is material, or goes to

9  the essence of the contract."); *Wyler*, 85 Cal. App. 3d at 403-4

10  ("Case law has uniformly held that a failure of consideration

11  must be 'material,' or go to the 'essence' of the contract before

12  rescission is appropriate."); *Crofoot Lumber*, 163 Cal. App. 3d at

13  333 ("The injured party...can not maintain an action for

14  restitution of what he has given the defendant unless the

15  defendant's non-performance is so material that it is held to go

16  to the 'essence'....") (quoting Corbin on Contracts § 1104, p.

17  464).

18        Factors considered in determining whether a partial breach

19  was material, include:  the intent of the parties, the language

20  of the lease or contract at issue, and the context and subject

21  matter of the agreement.  *Medico-Dental*, 21 Cal. 2d at 433.  An

22  additional factor is whether a party would have entered into the

23  contract without the provision in question.  *Id*.  The question of

24  materiality is one of fact.  *Calabrese*, 218 Cal. App. 2d at 782

25  ("This matter of materiality of the failure poses a question of

26  fact."); *FDIC*, 822 F.2d at 840 (same).

27        One way of determining whether a breach is material is to

28  decide whether the covenant breached was independent or

**8**

dependent.  Breach of an independent covenant is not, as a matter of law, a material breach.  By definition, an independent covenant does not go to the essence of a contract.  *Mills v. Richmond Co., Inc.*, 56 Cal. App. 774, 776 (1922); *Medico-Dental*, 21 Cal. 2d at 418-20.  Dependent covenants run to the whole of the consideration, whereas independent covenants run to only part of the consideration.  *Medico-Dental*, 21 Cal. 2d at 419-20.  Factors considered in determining whether a covenant is independent or dependent overlap with factors considered in determining whether a breach is material.  *Id*. at 433.  Covenants are deemed dependent or independent based on the intent of the parties, the language of the lease or contract at issue, and the context and subject matter of the agreement.  *Id*. at 419-20.  If the fact-finder determines that a covenant breached is independent, then it follows that the breach was not material and no rescission is warranted.  However, the fact-finder need not necessarily answer the question whether the covenant breached is independent in order to decide that the breach was material.  California case law has long held that the answer to the materiality question is determinative.  *North Pac.*, 43 Cal. App. at 188; *Newcomb*, 55 Cal. App. 2d at 443-44; *Medico-Dental*, 21 Cal. 2d at 433-34; *Wilson*, 117 Cal. App. 2d at 697; *Crofoot Lumber*, 163 Cal. App. 2d at 332-33; *Calabrese*, 218 Cal. App. 2d at 782; *Nelson*, 270 Cal. App. 2d at 195; *Wyler*, 85 Cal. App. 3d at 403-4; *FDIC*, 822 F.2d at 839-40; *Bradley*, 136 F.3d at 1327.

     Plaintiffs argue rescission of the Lease is warranted because the jury found Defendant's breach of the exclusive-use provision (§ 6.3) was a material breach.  (*See* Doc. 280, Verdict

Interrogatories 2, 3)  Defendant argues rescission of the Lease is not warranted because the exclusive-use provision is an independent covenant, and that, as a matter of law, breach of an independent covenant does not warrant rescission.  Defendant impliedly argues that the jury's finding that the breach was material is insufficient grounds to entitle Plaintiffs to the remedy of rescission or is not supported by substantial evidence.

The Lease was for a site that would be exclusively used for a buffet restaurant at Defendants' shopping center.  Plaintiffs established they were not willing to invest two million dollars to build a restaurant and to commit to a fifteen (15) year term lease without an exclusive use lease contract.  Plaintiffs bargained to be the sole and exclusive buffet restaurant in the center.  Defendant's position abdicates the jury's materiality finding.  Defendant's argument is reasonably construed as another argument to support a Rule 50(b) renewed motion for judgment as a matter of law.  Defendant has made no such motion.  Even if Defendant had properly brought such a motion, Defendant's argument still fails.

The law in California is well-established that a material breach of contract is sufficient grounds to support the remedy of rescission.  *North Pac.*, 43 Cal. App. at 188; *Newcomb*, 55 Cal. App. 2d at 443-44; *Medico-Dental*, 21 Cal. 2d at 433-34; *Wilson*, 117 Cal. App. 2d at 697; *Crofoot Lumber*, 163 Cal. App. 2d at 332-33; *Calabrese*, 218 Cal. App. 2d at 782; *Nelson*, 270 Cal. App. 2d at 195; *Wyler*, 85 Cal. App. 3d at 403-4; *FDIC*, 822 F.2d at 839-40; *Bradley*, 136 F.3d at 1327.  The jury in this case found that breach of the exclusive use provision was material.  That finding

was supported by substantial evidence based on the Plaintiffs'
need for commercial protection of its buffet restaurant business
within the shopping center.

Plaintiffs note that the interrogatory regarding materiality
was propounded to address their option to elect rescission after
the trial was over.  The record bears this out.  First, the jury
was instructed on the law regarding materiality:

> You must decide whether Plaintiff failed to
> receive any material performance Defendants
> promised to provide.  Performance is
> "material" if it is important to a contract
> and if it is likely to cause a reasonable
> person not to have entered into the contract
> if such performance was not provided.

(Doc. 281, Jury Instruction No. 21)[2]

Plaintiffs also cite to the transcript of the conference on

---

[2] Jury Instruction No. 21, titled "RESCISSION" stated in
full:

> Plaintiffs claim and have the burden of
> proving, by a preponderance of the evidence,
> that the contract with Defendant Excel Realty
> Partners was canceled.
>
> A party to a contract may cancel the contract
> if for any reason the party does not receive
> the material performance that was promised to
> be provided by the other party or if an
> important part of the performance that was
> promised was not provided.  The term
> "material" as used in this instruction, means
> important or serious.  You must decide
> whether Plaintiff failed to receive any
> material performance Defendant promised to
> provide.  Performance is material if it is
> important to a contract and if it is likely
> to cause a reasonable person not to have
> entered into the contract if such performance
> was not provided.

11

1  jury instructions to corroborate that Question 2 on the verdict

2  form ("Was Defendant's breach of paragraph 6.3 of the lease

3  agreement, material?") was intended to test Plaintiff's

4  entitlement to rescission:

5       MR. FAIRBROOK:  Your Honor, for you to know whether we
                        have a right to rescission, don't we
6                       need them to determine whether there was
                        a material breach, or is that number 2,
7                       is that what you are saying?  Oh, yes,
                        number 2 is fine.

8       THE COURT:      We are asking them to find if there is a
9                       material breach --

10      MR. FAIRBROOK:  I stand corrected, your Honor.

11      THE COURT:      -- specifically.

12  (Doc. 336, Jury Trial Day 9, Transcript 1535:7-10)

13       Finally, Plaintiffs cite a portion of its counsel's

14  (Mr. Fairbrook's) final argument during trial:

15           I want to explain to you a couple of things
             that you are going to see on your verdict
16           forms.  There is going to be a series of
             questions that ask you to answer questions
17           and answer further questions.

18           The second question you are going to be
             asked, I believe it's number two, is whether
19           or not you determine that the breach is
             material.
20
             One of Plaintiffs' claims is rescission.  The
21           only thing you have to do is make a claim as
             to the materiality of the breach.  You do not
22           have to calculate damages with respect to
             this.
23

24  (*Id*. at 1585:15-25)

25       Defendant does not dispute that the option of rescission was

26  discussed during the conference on jury instructions, included in

27  the jury instructions themselves, and discussed during closing

28  arguments.  Instead, Defendant's only response is this cursory,

**12**

1 confusing assertion:

2        Plaintiffs wrongly assert that rescission is
justified because the jury found a "material
3        breach" had occurred.  However, this is not
so.  California Civil Code § 1689 requires a
4        "failure of consideration" to justify
rescission.

5

6 (Doc. 360, Def.'s Mem. 4)  Defendant's argument is wrong.

7 Defendant fails to acknowledge that California Civil Code § 1689

8 requires a *material* failure of consideration.  A material breach

9 can constitute a material failure of consideration.  *See FDIC*,

10 822 F.2d at 840; *Crofoot Lumber*, 163 Cal. App. 2d at 332-33.

11 Contrary to Defendant's contention, Plaintiffs are correct that

12 the right to rescission is established because the jury found a

13 material breach of the Lease.

14     After a nine-day jury trial, the jury found that breach of

15 the exclusive use provision (§ 6.3 of the Lease) was a material

16 breach.  The purpose of the Lease was for Plaintiffs to invest

17 over two million dollars to build a buffet-style restaurant in a

18 shopping center where they were to pay substantial rent for more

19 than fifteen (15) years.  In return for this commitment of

20 capital and rent, Plaintiffs sought an exclusive right to limit

21 competition in the center from another buffet-style restaurant.

22 The term was material to the conduct of Plaintiffs' business and

23 is integral to the purpose of the Lease, operation by the tenant

24 of a buffet-style restaurant.  Defendant argued and lost its

25 contention that a "Chinese" buffet was not within the "buffet-

26 style" restaurants to be excluded.  The evidence showed that

27 Plaintiffs would not have undertaken the very substantial

28 financial risk of constructing a restaurant that would become the

13

property of the lessor, if a competing buffet-style restaurant were operating in the center directly across from Plaintiffs' restaurant.  Plaintiffs would not have entered into the Lease.

Defendant asserts that materiality is not the central inquiry, and rather, the key inquiry is whether the covenant breached is independent.  It is true that some courts approach the question of rescission based at least in part on an analysis of whether the provision breached was a dependent or independent covenant.  *See e.g., Medico-Dental*, 21 Cal. 2d at 418-19; *Mills*, 56 Cal. App. at 776.  This follows because the factors that determine whether a covenant is independent, overlap with the factors that in determine whether a breach was material.  *Medico-Dental*, 21 Cal. 2d at 433.  Breach of an independent covenant does not warrant rescission because, by definition, breach of an independent covenant is not material.  By its very nature, an independent covenant does not run to the whole of the consideration.  However, what Defendant has not provided is a citation to any authority holding that exclusive use provisions, such as the one at issue here, are independent covenants as a matter of law.  In fact, the courts in the two cases upon which Defendant relies, *Kulawitz* and *Medico-Dental*, found that the exclusive use covenants at issue there were dependent, based on an analysis of the factors and the factual record.

In this case, the jury has already made a finding that the breach was material.  It is not necessary for the court to now decide, as a matter of law, that the covenant at issue was independent.  The provision was integral to the Lease, which would not have been entered into without it.  The answer to the

**14**

mixed question of law and fact as to independence of the provision is irrelevant to the question whether the Plaintiff is entitled to elect rescission.  The jury's finding of materiality provides sufficient grounds for rescission, according to well-established California law.

**2.   Defendant's Argument that it was "Prejudicial Error" for the Court to Hold that Defendant Is Estopped from Asserting § 4.5 of the Lease Does Not Bar Rescission.**

While Defendant argues Plaintiffs are not entitled to rescission notwithstanding the jury's finding of materiality, Defendant states that its primary argument against rescission is based on § 4.5 of the Lease, an anti-rescission clause, which allegedly bars Plaintiffs from electing the remedy of rescission. (Doc. 360, Def.'s Mem. 3)  Defendant argues that the Court's holding in the November 2004 Order that Defendant was estopped from asserting § 4.5 as a bar to rescission was "prejudicial error."  Defendant argues that the elements of neither judicial estoppel nor equitable estoppel are present.  When the issue of the anti-rescission clause was presented at trial, Plaintiffs argued this Defendant had not previously asserted § 4.5 as a defense.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *see also Wagner v. Prof'l Eng'rs in Californial Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial

15

estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)).  Furthermore, judicial estoppel is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings' and to 'protect against a litigant playing fast and loose with the courts.'"  *Hamilton*, 270 F.3d at 782 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Three factors set forth by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) are considered in determining whether judicial estoppel should be invoked.  These factors are:  (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) the court must have relied on, or accepted, the party's previous inconsistent position; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *New Hampshire*, 532 U.S. at 751; *see also Hamilton*, 270 F.3d at 782-3.

The first issue is whether Defendant's current position regarding § 4.5 is clearly inconsistent with its earlier position.  Defendant argues that the Court held that § 4.5 bars rescission and that it never argued to the contrary.  (Doc. 360, Def.'s Mem. 8-9)  The issue, however, is not whether the language

of § 4.5 bars rescission.  The issue is whether rescission may now be elected as a post-verdict remedy by Plaintiffs.  Defendant previously took the position that rescission was available to Plaintiffs.  (*See* Doc. 353, November Order 52-3)  Defendant never previously asserted in the litigation that § 4.5 barred rescission.  It did not move to dismiss or for summary judgment based on the anti-rescission clause.  It did not identify the issue.  Now, Defendant does identify the issue.  Defendant's earlier position throughout the case and before trial, not to raise or rely on § 4.5, is clearly inconsistent with its later position at trial.

The second issue is whether the court accepted Defendant's earlier position.  Some reliance is required for the acceptance prong to be satisfied.  *Interstate Fire & Cas. Co., an Illinois Corp. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998).  Here, the court accepted Defendant's position. The court deferred entering judgment to allow the Plaintiffs to decide whether to elect rescission.  In addition, as the November 2004 Order held, the Court accepted Defendant's litigating position regarding rescission when it "adopted the Pretrial Order as the parties' accurate and full description of the issues to be determined at trial."  (Doc. 353, November 2004 Order 53) Defendant asserted the independent covenant and materiality defenses to rescission as set forth in the Pretrial Order.[3]  It

_____

[3] The Pretrial Order stated:

F.   Defendants alleged failure to perform their duties
     under the Ground Lease was not a material breach
     and therefore did not relieve FLAGSHIP or the

never asserted § 4.5 prior to trial.  The November 2004 Order noted that Defendant's statements and actions during trial gave no indication that it was relying on a contract term barring Plaintiffs' right to rescind.  Defendant does not assert that it objected to the deferred entry of judgment, nor does Defendant suggest it reserved the issue in the final Pretrial Order which superceded the pleadings and defined the issues of fact and law for trial.  *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005).

Third, Defendant would obtain an unfair advantage if it is allowed to assert § 4.5 as a bar to rescission at such a late stage in the litigation.  Discovery was not conducted as to § 4.5.  Plaintiffs did not know the section would be invoked as a defense by any dispositive motion or the Pretrial Order.  The contract damages awarded by the jury that Defendant would have to pay amount to approximately $1.5 million; the damages that Defendant could potentially pay if rescission is granted are substantially more, up to the approximately $3.9 million.  Finally, estoppel in this situation serves the overall policy goal of judicial estoppel to "protect against a litigant playing fast and loose with the courts."  *Russell*, 893 F.2d at 1037 (internal quotations and citations omitted).

Defendant also argues that the court erred in holding that equitable estoppel barred Defendant from asserting § 4.5 as a

REICHES of their separate and distinct obligations under the Ground Lease and Guaranty of Lease.  As such, Plaintiffs are not entitled to rescission of either the Ground Lease or the Guaranty Lease.

**18**

1 | defense.  While it is true that the court cited the elements of
2 | equitable estoppel in the estoppel section of its decision, it is
3 | not the case that the court actually held that equitable estoppel
4 | applied.[4]  A careful reading of the estoppel discussion reveals
5 | that the court's reasoning followed the law of judicial estoppel.
6 | At the end of the section, the court stated that "[b]y staying
7 | silent on § 4.5 until the 9th day of trial and leading the court
8 | and Plaintiffs to believe that rescission was being actively
9 | litigated, Defendants are estopped from raising § 4.5 as a bar to
10 | a rescission remedy."  (Doc. 353, November 2004 Order 53)  The
11 | court's discussion of the equitable estoppel standard and the
12 | absence of specific reference to judicial estoppel, even if
13 | ambiguous, does not prevent the application of judicial estoppel.
14 | This holding requiring Defendant to be bound by its conduct
15 | throughout the litigation is not clearly erroneous.  Defendant
16 | was properly estopped from asserting § 4.5 as a bar to
17 | rescission.

### 3. Defendant's Argument that Plaintiffs Are Not Entitled to Rescission Because Plaintiffs Have an Adequate Remedy at Law.

Finally, Defendant argues that Plaintiffs are not entitled

---

[4] Four elements must ordinarily be proved to establish an equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.  *Salgado-Diaz v. Ashcroft*, 395 F.3d 1158, 1166 (9th Cir. 2005); *Hampton v. Paramount Pictures Corp.*, 270 F.2d 100, 104 (9th Cir. 1960).

to rescission, an equitable remedy, because Plaintiffs have an adequate remedy at law.  Defendant asserts that "[i]t is well established under California law that where a breach can be compensated in damages, rescission is not an appropriate remedy." (Doc. 360, Def.'s Mem. 10)  The only cases Defendant cites in support, *Integrated, Inc. v. Alec Fergusson Elec. Contractors*, 250 Cal. App. 2d 287, 296-98 (1967); *Fountain v. Semi-Tropic Land & Water Co.*, 99 Cal. 677, 680 (1893), do not support this contention.  These cases re-state the established rule in California regarding rescission discussed at length above, i.e., that rescission is warranted only if the breach is material.  The cited cases involve the former distinction between law and equity that applied to rescission as an equitable remedy.

Defendant also cites the general principle that equitable relief is not warranted when there is an adequate remedy at law, and a number of cases that support this contention, *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822 (2002); *Taliaferro v. Taliaferro*, 144 Cal. App. 2d 109 (1956); *Ketchum v. Crippen*, 37 Cal. 223 (1869); and *Philpott v. Super. Ct.*, 1 Cal. 2d 512 (1934).  Defendant's argument is a red herring.  California Civil Code § 1689 provides for the remedy of rescission in cases where the consideration for a contract fails in whole or in a material way and § 1692 authorizes damages in such cases.  This is part of the statutory abrogation of the equitable-legal distinction applicable to rescission that formerly existed under California law.  *See Radinsky v. T. W. Thomas, Inc.*, 264 Cal. App. 2d 75, 78 (1968).  There is no requirement in the modern law of rescission that the remedy at law be inadequate before the plaintiff is

entitled to rescission whether it is characterized as legal or equitable relief.  Any such requirement has been superceded by Cal. Civ. Code § 1692.

### 4.  Conclusion.

None of Defendant's arguments to bar the remedy of rescission are legally accurate or persuasive.  The jury found a material breach of the Lease.  Plaintiffs have elected rescission, an available remedy, pursuant to Cal. Civ. Code §§ 1689 and 1692.  Plaintiffs are entitled to rescind and to rescission damages.

### C.  **Types of Rescission Damages That May Be Recovered.**

#### 1.  **Whether Plaintiffs Are Entitled to Restitution, Consequential Damages, or Both.**

The next issue is the types of damages that may be awarded under rescission.[5]  California Civil Code § 1692 provides that

_____

[5] The analysis of "consequential" versus "incidental" damages in the November 2004 Order was related to the question whether Defendants had a Seventh Amendment right to a jury trial on the issue of rescission damages.  The Seventh Amendment right to a jury trial, unlike the measure of damages, is a question of federal law.  In diversity cases, when a party's Seventh Amendment right to a jury trial is contingent upon whether the relief to be awarded is legal or equitable in nature, the court turns to federal law to characterize the remedy as one or the other.  *Simler v. Conner*, 372 U.S. 221, 222 (1963); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1026-7 (9th Cir. 1996).  The November 2004 Order therefore looked to federal law to determine whether the remedy sought was legal or equitable in nature.

The Seventh Amendment right to a jury is no longer at issue.  The distinction between damages defined as "consequential" or "incidental" under federal law is not relevant to the issue of

21

two types of damages, restitution and consequential damages, are awardable as rescission damages:

> A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

The purpose of rescission damages, including both restitution and consequential damages, is to restore the parties to the *status quo ante*. *Runyon*, 2 Cal. 3d at 314-15 ("It is the purpose of rescission to restore both parties to their former position as far as possible...and to bring about substantial justice by adjusting the equities between the parties despite the fact that the status quo cannot be exactly reproduced.") (internal quotations and citations omitted), quoted in *Gardiner Solder Co. v. Suppaloy Corp.*, 284 Cal. App. 3d 1537, 1544 (1991); *see also Millar v. James*, 254 Cal. App. 2d 530, 533 (1967) ("[T]he 1961 enactment of Civil Code section 1692 makes clear the policy of this state to give full relief in a case of rescission, unimpeded by any technical distinction between restitution and

---

the measure of damages based on rescission under California law. Section 1692 governs and Section 1692 provides for "consequential" damages as interpreted by California case law. In a diversity case, the issue of measure of damages is one of substantive law as governed by the law of the forum state. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1064-65 (9th Cir. 2003) (citing *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S.Ct. 2909 (1989) ("In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of...damages for the conduct in question...[is a] question [ ] of state law.")).

damages.").

Section 1692 provides that the determination of the types of damages necessary to restore the plaintiff to the *status quo ante* is within the discretion of the trial court:

> If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties.

Cal. Civ. Code § 1692; *see also* 12 Harry D. Miller and Marvin B. Starr, California Real Estate ("Miller and Starr") *"Reimbursement" or "Consequential Damages"* § 34:9, § 34:9 (3d ed. 2004) ("Rescission 'damages' are simply a court-determined adjustment of the equities between the parties."); *Gardiner Solder*, 232 Cal. App. 3d at 1546 (in case where restitution damages were awarded, the appellate court noted that "[t]he manner in which restitution is to be made is addressed to the sound discretion of the trial court") (citing *Runyon*, 2 Cal. 3d at 316); *Utemark v. Samuel*, 118 Cal. App. 2d 313, 318 (1953).

Restitution is the restoration to the rescinding party of his consideration. *See Nelson*, 270 Cal. App. 2d at 195 ("Restitution means that the defendant must hand back to the plaintiff what the defendant has received from the plaintiff in the transaction."); *see also Ogden Martin Sys., Inc. v. San Bernardino County, Cal.*, 932 F.2d 1284, 1287 (9th Cir. 1991) (en banc) ("In a rescission action, the complaining party may receive restitution for all benefits conferred on the other party, restoring both parties to economic *status quo ante*."); *Crofoot Lumber*, 163 Cal. App. 2d at 331; 12 Miller and Starr at § 34:9.

Consequential damages are any other relief necessary to restore the plaintiff to the *status quo ante*, or to as near an economic position as he was in *before* the contract was entered into. *Runyon*, 2 Cal. 3d at 316-17; *Lobdell v. Miller*, 114 Cal. App. 2d 328, 343 (1953); *see also O'Neill v. Spillane*, 45 Cal. App. 3d 147, 159 (1975) (in fraud cases the term "additional damages" means expenses and other consequential damages stemming from the fraud).

Plaintiffs argue they are entitled to both restitution and consequential damages under § 1692. Plaintiffs identify several subcategories of damages under the primary categories of restitution and consequential damages.[6] First, Plaintiffs assert they are entitled to the following subcategories of restitution:

    (1)   All Rent Paid to Defendants under the Lease; and

    (2)   Costs of Improvements to the Land, including:

       (a) Building Construction Costs

       (b) Equipment Costs

Second, Plaintiffs assert they are entitled to the following subcategories of consequential damages:

    (1)   Expenses Relating to Opening, Running, and Closing the Restaurant, including:

---

[6] Plaintiff labels its claimed consequential damages as "special" in an attempt to be consistent with the distinction made between consequential and incidental damages in the November 2004 Order. As explained above, however, this distinction is not a meaningful one with respect to the application of § 1692. Damages claimed by Plaintiffs other than restitution are therefore referred to as "consequential" for the sake of consistency with the language of § 1692.

(a)   Opening Inventory;

(b)   Franchise Fee to Golden
      Corral;

(c)   Training Costs;

(e)   Interest Paid on Construction
      Loan;

(f)   "Bank of America" rent;[7]

(g)   Rent paid under Plaintiffs'
      Forbearance Agreement with
      their Lender;[8] and

(h)   Other "Losses" and "Expenses."

(2)   Accrued But Unpaid Interest;[9] and

(3)   Prejudgment Interest.

Defendant does not contest that if rescission is awarded, Plaintiffs are entitled to restitution damages.  Specifically, Plaintiffs are entitled to reimbursement for the rent paid under the Lease and the improvements to the land.  Defendant does

---

[7] According to Defendant, Plaintiffs agreed to pay approximately one year rent owed to Defendant by the Bank of America, a former tenant.  Defendant asserts this agreement was made before the Lease was entered into and was independent of the Lease.  The court could not verify this assertion.  Defendants cited "Plaintiff's Exhibit P" but provided no copy.  Plaintiffs do not discuss this agreement in their brief.

[8] Pursuant to the "Forbearance Agreement," which Plaintiffs entered into with their lender, The Money Store, Plaintiffs agreed, *inter alia*, to continue to pay rent to Defendants pending the conclusion of the lawsuit.

[9] In exchange for Plaintiffs' agreement to continue to pay rent, The Money Store agreed under to the Forbearance Agreement to allow interest on the loan to accrue unpaid pending resolution of the case.  In accordance with that agreement, Plaintiffs have not paid this interest and it continues to accrue to date.

1  dispute, however, that equipment costs should be included as

2  "restitution" damages.  Defendants did not keep the equipment;

3  instead it was sold at auction for $11,260, an amount which was

4  received by Plaintiffs.  Restitution is the disgorgement of

5  unjust profits.  *See Nelson*, 270 Cal. App. 2d at 195; *Runyon*, 2

6  Cal. 3d at 316-17; *Lobdell*, 114 Cal. App. 2d at 343; *Ogden*

7  *Martin*, 932 F.2d at 1287.  Defendants did not keep the equipment

8  and did not profit by its purchase.  Equipment costs are not

9  restitution; they are instead sought as consequential damages.

10      Although Defendant does not dispute Plaintiffs' entitlement

11  to restitution, Defendant does dispute Plaintiffs' entitlement to

12  consequential damages.  However, Defendant offers no persuasive

13  argument or legal authority why § 1692 does not apply in this

14  case.[10]  Section 1692 explicitly provides for consequential

15

16      [10] Defendant argues that Plaintiffs are not entitled to
    consequential damages because this court held that Plaintiffs
17  waived their right to consequential damages by failing to submit
    the issue to the jury.  Defendant cites to no portion of the
18  November 2004 Order in support of its contention.  Defendants
    cite only to the court's comment during the February 7, 2005,
19  hearing:
20
            I believe that my ruling communicates my view
21          that the issue of consequential damages was
            not submitted to the jury, and to that
22          extent, it was not reserved.
23
    However, Defendant fails to cite the lines of the transcript
24  immediately following this statement:
25          However, what restitutionary damages that
            would result from rescission or any other
26          incidental damages or other damage that would
            be permitted by law is, as far as I'm
27          concerned, reserved and open.
28

                                  26

damages in cases where rescission is awarded.

Plaintiffs are entitled to both restitution and consequential damages.  Whether Plaintiffs are entitled to all categories of consequential damages they claim is discussed below in subsection III.C.3.

### 2.   Calculation of Restitution Damages.

While Defendant does not dispute Plaintiffs' right to restitution as rescission damages, Defendant disputes the way in which Plaintiff calculates restitution damages, specifically cost of improvements to the land and rent.

### (a)   Measure of Damages for Plaintiffs' Improvements to the Land.

First, Defendant argues that the proper measure of damages for the improvements to the land (i.e., the construction of the building) is the fair market value of the building.  Plaintiffs argue that out-of-pocket cost is the correct measure.  (Doc. 360, Def.'s Opp. 21; Pls.' Mem. 18-19)  Miller and Starr note that, in cases involving the sale of real estate, "[w]here the seller has

---

This statement by the court was based on Defendant's stated position trial that rescission damages would be addressed by the court after the jury trial.  The court had ruled that the Plaintiffs elected to not submit the issue of the amount of "all consequential damages" to the jury.

Second, Defendant fails to address § 1692 at all in its brief despite that Plaintiffs discuss § 1692 at length in their brief.  Ignoring the law violates Defendant's counsel's professional responsibility to cite and address authority adverse to their position.  This conduct makes the court's job manifestly more burdensome.

committed fraud on the buyer, the decisions are unclear whether the buyer receives the cost of his or her improvements or their value."  12 Miller and Starr at § 34:9.  Miller and Starr cite a case upon which Defendant relies, *Kent v. Clark*, 20 Cal. 2d 779, 785 (1942), as an example of a case where a buyer under a land sale contract was awarded the value of improvements, rather than their cost.  In *Kent*, the buyer rescinded the land contract based on the seller's fraud.

However, Miller and Starr cite two other cases as examples of the opposite situation, where the buyers were found entitled to the cost of the improvements, not the fair market value. *Lobdell v. Miller*, 114 Cal. App. 2d 328, 341, 343; *Utemark v. Samuel*, 118 Cal. App. 2d 313, 315-16 (1953).  *Utemark* reasoned that in a land sale contract where the buyer makes improvements and the seller refuses to convey, upon rescission, the buyer may recover the cost of permanent improvements placed on the land in good faith.  118 Cal. App. 2d at 314.  The buyer is entitled to be restored what has been expended, not just the increased value of the land by virtue of the improvement.  *Id*. (citing *Montgomery v. Meyerstein*, 186 Cal. 459, 464 (1921)).  Determination of restitution damages is in the discretion of the trial court. Cal. Civ. Code § 1692; *Gardiner Solder*, 232 Cal. App. 3d at 1546; *Runyon*, 2 Cal. 3d at 316; *Utemark*, 118 Cal. App. 2d at 318.  It is the goal of the court sitting in equity to determine what damages will best put the plaintiff in a position as close to the *status quo ante* as possible.

While this case does not involve fraud, Plaintiffs nevertheless relied on the exclusive use provision when entering

28

into the Lease and investing over two million dollars in the

Restaurant.  Cost is likely the greater amount.  Miller and Starr

at § 34:9 ("The more equitable result is to award either the cost

expended by the buyer (if reasonable), or the value to the

seller, whichever is *greater*, since the seller induced the buyer

to rely on the contract in making the expenditures.").  The more

equitable measure here is cost.  The precise calculation of cost

is not possible based on Plaintiffs' current submissions.  A

further hearing is necessary to determine whether the cost of the

building can be calculated based on the evidence in the record.

### (b)   Measure of Damages for Rent.

Second, Defendant argues it is entitled to an equitable

adjustment of the monthly rent based on the fair market value of

the building.  Defendant argues that "[e]quity is not achieved

merely by deducting the ***ground lease*** payments from Plaintiffs'

claim."  (Doc. 360, Def.'s Opp. 22 (emphasis in original))

Defendant argues it is entitled to an off-set for the reasonable

rental value of the land while it was in Plaintiffs' possession,

taking into account the increased value of the property with the

restaurant that Plaintiffs built.  Defendant cites *Kent v. Clark*,

20 Cal. 2d 779, 785 (1942), and *Runyon*, 2 Cal. 3d at 315, in

support.  The court in *Kent* stated that:

> [The plaintiff] may elect to rescind the
> contract for fraud, restore possession to the
> vendor, and recover the purchase money paid
> less the fair rental value for the use of the
> property during his occupancy.  This right of
> rescission is available to a vendee in
> default.

20 Cal. 2d at 784.  *Kent* was cited with approval for this

29

1  principle in *Mahurin v. Schmeck*, 95 Ariz. 333, 342 (1964);

2  *Warfield v. Richey*, 167 Cal. App. 2d 93, 99-100 (1959); *McCoy v.*

3  *West*, 70 Cal. App. 3d 295, 301 (1977).

4       The *Runyon* court discussed monetary awards given in

5  conjunction with restitution in pre-1961 law actions, and stated

6  that "[w]here the vendor rescinded, the vendee was liable for the

7  rental value of the land while he had possession."  2 Cal. 3d at

8  315 (citing *Austin v. Burns*, 139 Cal. App. 747, 753 (1970).

9  Plaintiffs note that *Utemark* qualified this rule, holding that

10 the defendants "were not entitled to receive as a credit the

11 value of the use of the improvements installed by plaintiffs."

12 118 Cal. App. 2d at 318.  The rule in California is discussed in

13 Miller and Starr at § 34:9, which provides the seller (lessor) is

14 entitled to credit for a reasonable rental value for the period

15 of the buyer's (lessee's) occupancy.  Miller and Starr also note

16 that the seller (lessor) is *not* entitled to the rental value of

17 improvements made by the buyer, and cite *Utemark* as authority.

18      The more equitable result here is to prevent Defendant from

19 benefitting from Plaintiffs' efforts and expenditures in

20 improving the land.  Plaintiffs invested over two million dollars

21 to build their Restaurant in reliance on the Lease that

22 Defendants later breached.  Defendants should not benefit from

23 their breach by an enhanced off-set for the rental value of

24 improvements that Plaintiffs funded.  The Lease is prima facie

25 evidence of the fair rental value of the leasehold with

26 improvements.

27 //

28 //

### 3. Subcategories of Consequential Damages to Which Plaintiffs Are Entitled.

The next issue is which specific subcategories of consequential damages Plaintiffs may collect under § 1692. Consequential damages are any damages in addition to restitution required to make the plaintiff whole.  Cal. Civ. Code § 1692; *see also Runyon*, 2 Cal. 3d at 316-17; *Lobdell*, 114 Cal. App. 2d at 343.  Plaintiffs claim they are entitled to several subcategories of consequential damages, some of which are allowed under § 1692 and others which are not.

The subcategories of consequential damages claimed by Plaintiffs allowable under § 1692 include:  opening inventory costs, equipment costs, the franchise fee to Golden Corral, training costs, rent paid under the Forbearance Agreement, and interest (paid and unpaid) on the construction loan and the Money Store loan.  These subcategories of damages are recoverable under § 1692 because they would restore the Plaintiffs to a position as near as possible to the *status quo ante*.  These are expenses Plaintiffs incurred in reliance on the Lease and would not have been incurred if the restaurant had not been built and opened. It is not possible based on Plaintiffs' submissions for the court to determine the exact amounts for these subcategories of consequential damages.  The figures submitted on Exhibits A and B of Plaintiffs' brief do not appear to agree.  A further hearing is necessary to clarify whether the amount of damages can be calculated based on the evidence in the record.

Other subcategories of consequential damages claimed by Plaintiffs are difficult to discern from the ambiguous statements

31

1  in their brief and on the attached exhibits.  (Doc. 358, Pls.'

2  Mem. at 24-25, Ex. B at 2)  Based on these ambiguous submissions,

3  Plaintiffs appear to claim several subcategories of damages that

4  are not consequential damages.

5       First, Plaintiffs' explanation of the sources of the damages

6  listed in Exhibit B as "Losses prior to closure and after

7  closure" and "Additional Expenses (losses) incurred from the date

8  of Rob Wallace's analysis through commencement of trial (Rent

9  payments)" is not clear.  (Doc. 358, Pls.' Mem., Ex. B at 2)  It

10 has not been possible to locate Plaintiffs' citations to the

11 record.  The entries that start with "JT" have Bates Stamp

12 numbers.  Approximately 15 to 20 sets of "JT" documents have been

13 located, but not others.  To the extent Plaintiffs claim "losses"

14 based on Plaintiffs' alleged lost future profits, such damages

15 are not allowed in a rescission case.  Lost profits are "benefit

16 of the bargain" damages, which are damages that contemplate

17 continuing performance under the contract.  *Runyon*, 2 Cal. 3d at

18 316 n. 15; 12 Miller and Starr at § 34:9 ("There is a material

19 distinction between 'reimbursement damages' based upon rescission

20 and the damages available to a buyer [lessee] who elects to

21 affirm the contract and recover damages for the seller's

22 [lessor's] fraud.  The measure of damages for breach of contract

23 provided in [Cal. Civ. Code § 3343] does not apply to any action

24 for rescission.").  Plaintiffs cannot claim the benefit of the

25 bargain when they have elected rescission damages which returns

26 the parties to the *status quo ante* as if there had been no

27 contract.

28      Second, to the extent Plaintiffs claim rent payments made

pursuant to the Forbearance Agreement, these are consequential damages. However, to the extent Plaintiffs claim other unexplained "expenses" or "losses," Plaintiffs are not entitled to such damages unless they are explained.

Finally, Defendants argue that the "Bank of America" rent claimed by Plaintiffs is not recoverable. According to Defendants, the Bank of America rent was paid pursuant to an agreement between the parties that was independent of the Lease and that provided Plaintiffs would pay the "Bank of America" rent regardless of whether a ground lease was entered into. Defendant provides no copy of the agreement, which it refers to as "Plaintiff's Exhibit P." To the extent Defendant's representation of this agreement (Plaintiff's Exhibit P) is correct, i.e., that the Bank of America rent was to be paid regardless of whether a lease was eventually entered into, Plaintiffs are not entitled to this rent since it is not required to return Plaintiffs to the status quo.

As to claims of interest, in diversity cases, prejudgment interest is calculated at the state law rate. *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 801 F.2d 1560, 1569 (9th Cir. 1986); *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004). Post-judgment interest rate is determined by federal law. *In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002).

D.   **Whether Further Proceedings Are Necessary to Determine the Amount of Damages.**

The court will not take evidence without a jury. However, a

1  hearing based on the applicable measure of damages from evidence
2  in the record is necessary given the parties' manifest
3  disagreement as to whether sufficient evidence exists in the
4  record to calculate damages and an absence of consistency in
5  amounts listed on Plaintiffs' Exhibits A and B.
6     A hearing on the issues identified above will be held
7  November 1, 2005, at 9:00 a.m. in Courtroom 2.
8
9  **SO ORDERED.**
10
11 **DATED:** September 30, 2005

                                          **/s/ OLIVER W. WANGER**
12                                        _____
                                             **Oliver W. Wanger**
13                                        **UNITED STATES DISTRICT JUDGE**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28