IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

FLAGSHIP WEST, LLC, et al.,     )     No. CV-F-02-5200 OWW/DLB
                                )
                                )     ORDER GRANTING IN PART AND
                                )     DENYING IN PART EXCEL REALTY
            Plaintiff,          )     PARTNERS, L.P.'S RENEWED
                                )     MOTION FOR JUDGMENT AS A
       vs.                      )     MATTER OF LAW AND TO ALTER
                                )     OR AMEND JUDGMENT (Doc. 397)
                                )     AND AMENDING PARAGRAPH 2 OF
EXCEL REALTY PARTNERS, L.P.,    )     JUDGMENT ENTERED ON DECEMBER
et al.,                         )     14, 2006
                                )
                                )
            Defendant.          )
                                )
_____)

     Before the Court is the Renewed Motion for Judgment as a
Matter of Law and To Alter or Amend Judgment filed by Defendant
Excel Realty Partners, L.P. (Excel).

     A.   Background.

     On December 14, 2006, Judgment was entered.  The Judgment
states in pertinent part as follows:

          On December 3, 2003, a jury returned verdicts
          in favor of Plaintiffs, awarding Plaintiffs
          $1,480,740 in contract damages.  Plaintiffs
          then elected the remedy of rescission and
          consequential damages. The district court

1

determined in its Memorandum Decision and
Order Re: Post-Trial Election of Remedies,
dated September 30, 2005, that Plaintiffs
were entitled to rescission and consequential
damages, the amount of which is set forth in
the district court's Memorandum Decision Re:
Rescission Damages and Availability of
Prejudgment Interest, dated November 14,
2006, and previous orders.

JUDGMENT IS ENTERED AS FOLLOWS:

1. The Ground Lease ("Lease") entered into
between Plaintiffs and Defendant, EXCEL
REALTY PARTNERS L.P., (attached as Exhibit B
to Plaintiffs' Second Amended Complaint),
signed by the individual Plaintiffs as
guarantors in their individual capacities to
pay rent and perform all covenants is
rescinded from its date of execution, and
such Lease shall have no future force and
effect, as if all Plaintiffs and Defendants
had not entered into and executed the Lease;

2. Plaintiffs FLAGSHIP WEST LLC, MARVIN G.
REICHE, and KATHLEEN REICHE, and each of
them, are awarded $2,598,151 for damages in
rescission and consequential damages
resulting from Defendants' breach of
contract, minus credits due Defendants in the
amount of $455,976, and therefore shall
recover from Defendants, EXCEL REALTY
PARTNERS L.P., in the amount of $2,142,175;

3. Judgment as a matter of law was entered in
favor of defendant NEW PLAN EXCEL REALTY
TRUST, INC., and against Plaintiffs, on
November 23, 2003;

....

On December 21, 2006, Excel filed an Ex Parte Application

for an extension of time from December 29, 2006 until January 29,

2007 "to prepare, file and serve its pleadings in support of its

post-trial motions pursuant to Federal Rules of Civil Procedure,

Rule 59."  By Order filed on December 22, 2006, Excel's Ex Parte

2

1 Application was granted, the Order stating in pertinent part:

2          2.   EXCEL shall have until January 15,
           2007(OWW), within which to serve and file its
3          pleadings in support of any post-trial
           motions filed by EXCEL pursuant to Rule 59 of
4          the Federal Rules of Civil Procedure,
           including but not limited to citations to the
5          record, supporting affidavits and supporting
           briefs.   NO FURTHER EXTENSIONS WILL BE
6          GRANTED (OWW).

7      On December 29, 2006, Excel filed a three-page pleading

8 captioned "Excel Realty Partners, L.P.'s "Notice of Motion and

9 Renewed Motion for Judgment as a Matter of Law and To Alter or

10 Amend Judgment".   This pleading states in its entirety:

11          Defendant, EXCEL REALTY PARTNERS, L.P.,
           (hereafter "Excel"), through counsel and
12          pursuant to Fed.R.Civ.P. 50(b) and 59(e),
           moves this Court for judgment as a matter of
13          law and to alter or amend the Judgment
           entered December 14, 2006 (docket #392), for
14          the reasons set forth herein and for the
           further reasons and authorities to be filed
15          on or before January 15, 2007 in accordance
           with the Court's Order dated December 22,
16          2006 (docket #395) and asserts as follows:

17          1. There was no legally sufficient basis for
           the jury to find that the Four Seasons
18          restaurant caused the Golden Corral
           restaurant to close or caused damages to
19          Plaintiffs;

20          2. There was no legally sufficient basis for
           the jury to find that Plaintiffs were
21          constructively evicted from the demised
           premises;
22
           3. There was no legally sufficient basis to
23          support the jury's finding of a material
           breach of the Ground Lease;
24
           4. The Court erred in granting Plaintiffs'
25          claim for rescission of the Ground Lease;

26          5. The Court erred in holding that the jury's

3

finding of a material breach of the Ground Lease constituted a finding of a material failure of consideration or otherwise properly supported Plaintiffs' claim for rescission;

6. The Court erred in holding that the breach of §6.3 of the Ground Lease, an independent covenant, constituted a material failure of consideration, sufficient to justify rescission;

7. The Court erred in holding that Excel is estopped to assert §4.5 of the Ground Lease as a bar to rescission;

8. The Court erred in holding that §22.25 of the Ground Lease does not survive rescission;

9. The Court's award of consequential damages in connection with Plaintiffs' rescission claim violated the Seventh Amendment of the Unites States Constitution;

10. The Court erred in holding that restitution for improvements to the demised premises should be based on cost, not fair market value, where fraud was not alleged or proved;

11. The Court erred in holding that the "[Ground] Lease is *prima facie* evidence of the fair rental value of the leasehold with improvements" (Memorandum Decision and Order dated Sept. 30, 2005, docket #362, p. 30:24-26) in calculating the credit to which Excel was entitled;

12. The Court erred in holding that Excel was not entitled to an equitable adjustment for the reasonable rental value of the demised premises, as improved;

13. The Court erred in holding that Plaintiffs were entitled to recover as consequential damages the original cost of Plaintiff's used equipment in the amount of $589,271, which Plaintiff disposed of for $11,260;

14. The Court erred in failing to hold that,

4

> in rescission, the cost of Plaintiffs' used
> equipment was an unrecoverable business loss;
>
> 15. The Court erred in holding that there was
> legally sufficient evidence to award
> $1,239,030 for construction cost[.]

On January 17, 2007 at 10:32 a.m., Excel filed its Memorandum in Support of Renewed Motion for Judgment as a Matter of Law and Motion to Alter or Amend Judgment, with supporting exhibits.

Rule 50(b), Federal Rules of Civil Procedure, pertains to renewing a motion for judgment as a matter of law.  Rule 50(b) provides in pertinent part:

> If the court does not grant a motion for
> judgment as a matter of law made under
> subdivision (a), the court is considered to
> have submitted the action to the jury subject
> to the court's later deciding the legal
> questions raised by the motion.  The movant
> may renew its request for judgment as a
> matter of law by filing a motion no later
> than 10 days after the entry of judgment or -
> if the motion addresses a jury issue not
> decided by a verdict - no later than 10 days
> after the jury was discharged.

Rule 59(e), Federal Rules of Civil Procedure, provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment."

A.  <u>Plaintiffs' Objection to Timeliness of Excel's Motion</u>.

Plaintiffs' object to consideration of Excel's motion, contending that it is untimely filed.

1.  <u>Violation of Particularity Requirement of Rule 7(b)(1)</u>.

Plaintiffs contend that Excel's Notice of Motion filed on

5

1   December 29, 2006 is "skeletal" and does not meet the

2   requirements of a motion under the Federal Rules of Civil

3   Procedure.

4        Rule 7(b)(1), Federal Rules of Civil Procedure, provides in

5   pertinent part:

6            An application to the court for an order
             shall be by motion which ... shall be made in
7            writing, shall state the grounds therefor,
             and shall set forth the relief or order
8            sought.

9        Plaintiffs, citing *Clipper Exxpress v. Rocky Mountain Motor*

10  *Tariff Bureau,* 690 F.2d 1240 (9th Cir.1982), *cert. denied*, 459

11  U.S. 1227 (1983), contend that the Ninth Circuit held that a Rule

12  59(e) motion supported by a memorandum of points and authorities

13  "was more than sufficient to satisfy the particularity

14  requirement of Rule 7(b)", *id.* at 1248, notwithstanding the

15  failure to contemporaneously file supporting affidavits.

16  Plaintiffs argue that a Rule 59(e) motion unaccompanied by points

17  and authorities are not considered complete and, therefore, are

18  not timely filed.

19       Plaintiffs also cite *Martinez v. Trainor*, 556 F.2d 818, 819-

20  820 (7th Cir.1977), wherein the Seventh Circuit held:

21            In its entirety, the motion served and filed
              on November 22, 1976 stated:

22
                   'NOW COMES the Defendant James L.
23                 Trainor, Director, ILLINOIS
                   DEPARTMENT OF PUBLIC ID, by and
24                 through his attorney ..., requests
                   this Honorable Court, pursuant to
25                 Rule 59(e) FRCP, to alter, amend,
                   or vacate the Declaratory Judgment
26                 entered November 11, 1976.' ...

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Appellees claim that this motion with its
skeleton declaration was not a proper motion
and therefore was not adequate to suspend the
finality of the judgment.

...

The defendant-appellant suggests that the
motion on its face is sufficient in that it
informed the plaintiffs that the State wanted
the court to reconsider its prior ruling.
While this may be true, it is irrelevant to
the 'particularity' requirement but instead
satisfies the 'relief or order sought'
criteria of Rule 7(b)(1).  Looking at the
motion, it is apparent that the defendant
failed to state even one ground for granting
the motion and thus failed to meet the
minimal standard of 'reasonable
specification.'

In the alternative, defendant suggests that
the supporting brief filed one week later
detailed the reasons for the motion and that
this later filing satisfies the
'particularity' requirement.  In effect,
defendant wants this Court to view the
Memorandum as amending the November 22
motion.  Were we to accept this view we would
be in effect permitting an extension of time
under Rule 6(b) of the Federal Rules of Civil
Procedure.  This we cannot do for two
reasons.  First, amendments are not allowed
unless they consist of an elaboration of a
ground already set out in the original
motion.  Secondly, if a party could file a
skeleton motion and later fill it in, the
purpose of the time limitation would be
defeated.  'Casting this substantial doubt on
the finality of judgment would increase the
burdens on an already overloaded federal
judiciary.' ....

*See also Lac Du Flambeau Band of Lake Superior Chippewa Indians*

*v. Wisconsin*, 957 F.2d 515, 516-517 (7th Cir.), *cert. denied*, 506

U.S. 829 (1992)("An empty motion cannot reserve time to file an

explanation after the ten days allowed by Rule 59(b), see

7

*Martinez*, but a brief contemporaneous with the motion fulfills the requirement of Fed.R.Civ.P. 7(b)(1) that motion papers 'state with particularity the grounds' for the relief demanded."); *Riley v. Northwestern Bell Telephone Co.*, 1 F.3d 725, 726-727 (8th Cir.1993).

Plaintiffs' contention is without merit.  Although Excel's Notice of Motion was not accompanied by a memorandum of points and authorities, the Notice of Motion is not skeletal as was the case in the decisions cited above.  The Notice of Motion describes the relief sought and details 15 separate grounds for that relief.  Plaintiffs' attempt to extrapolate from *Clipper Exxpress* the requirement that the notice of motion must be accompanied by the memorandum of points and authorities in order to satisfy Rule 7(b) is unavailing; the issue in *Clipper Exxpress* was the failure to submit supporting affidavits.

Further, in *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752 (1st Cir.1996), on February 9, the day after judgment was entered, Napco moved for an extension of time for filing its memorandum in support of its post-judgment motions, stating:

> Plaintiff has prevailed on four separate and distinct legal claims.  Therefore, in order to obtain postjudgment relief, Napco must challenge all four bases for the judgment. This will require Napco to argue several substantial legal and factual issues including, for example, the recoverability of lost profits for negligent misrepresentation, the sufficiency of evidence of intentional misrepresentation and of repudiation of warranty, the statute of limitations (three-year and four-year), as well as issues relating to Chapter 83A and damages.

8

1  *Id.* at 760.   On February 14, the district court granted Napco's

2  request for extension of time, giving Napco until March 1 to file

3  the post-judgment memoranda.   On February 17, six days before the

4  10-day limit for filing post-judgment motions expired, Napco

5  filed a motion pursuant to Rule 50(b) and 59.   In summary

6  fashion, the motion outlined the subject matter and said the

7  grounds would be set forth in the March 1 memorandum to be filed

8  later in accord with the district court's extension.   Also on

9  February 17, Napco filed a motion under Rule 52(b) and 59 seeking

10  either to amend the district court's findings of fact and

11  conclusions of law or to have a new trial on the Chapter 93A

12  claim, the motion also stated that the grounds for the motion

13  would be set forth in the March 1 memorandum.   On February 24,

14  one day after the 10-day period expired, Plaintiff moved to

15  strike Napco's post-judgment motions, arguing that they lacked

16  "particularity" under Rule 7(b)(1) and that, accordingly, no

17  motion had been filed within the 10-day period prescribed by

18  Rules 50(b), 52(b) and 59.   The district court granted

19  Plaintiff's motion, refusing to take into consideration Napco's

20  extension motion or any of the other surrounding circumstances.

21  *Id.*   The First Circuit reversed, holding in pertinent part:

22            Rule 7(b)(1) requires that motions 'state
           with particularity the grounds therefore.'
23            ... Napco's post-judgment motions are subject
           to the requirements of Rule 7(b)(1).   The
24            particularity requirement, however, is to be
           read flexibly in 'recognition of the peculiar
25            circumstances of the case.' ... This is
           because Rule 7 is designed 'to afford notice
26            of the grounds and prayer of the motion to

both the court and the opposing party,
providing that party with a meaningful
opportunity to respond and the court with
enough information to process the motion
correctly.' ... When a motion is challenged
for lack of particularity the question is
'whether any party is prejudiced by a lack of
particularity or "whether the court can
comprehend the basis for the motion and deal
with it fairly.' ....

While Napco's motion was at best sloppy
practice, we believe that it was sufficiently
particular when read in conjunction with the
extension motion and prior filings.  Although
the extension motion was not filed
simultaneously with the Rule 50(b), 59 and
52(b) motions, it was filed only a week
before, within the ten-day period, and was
obviously closely related to the Rule 50(b)
motion ... The extension motion specified the
bases of the judgment that Napco 'must
challenge,' including the sufficiency of the
evidence on the intentional misrepresentation
claim and the willful repudiation of warranty
claim, as well as issues relating to Chapter
93A and damages.  Napco thus represented to
both the court and Cambridge Plating the
grounds for its post-judgment motions.  No
claim is made that there was any intervening
event that would have made the
representations in the extension motion
unreliable.

Cambridge Plating makes a passing argument in
its brief that it was unable to respond to,
or the district court to process, Napco's
motions.  If the Rule 50(b), 59 and 52(b)
motions are viewed in isolation, Cambridge
Plating has a point.  But the motions cannot
be viewed in isolation.  In addition to the
closely filed extension motion, significant
briefing on the Chapter 93A issues had just
been completed and Napco had earlier made
quite a detailed Rule 50(a) motion, of which
the Rule 50(b) motion was a 'renewal.'  In
short, the record shows that Napco was taking
steps specifically to make evidentiary
challenges to the verdict on all of the major
issues litigated at trial.  The grounds Napco
would press in its post-judgment motions were

10

sufficiently known.  The motions under Rules 50(b), 59 and 52(b) were adequate, although barely, under the circumstances.

The district court premised its decision on the belief that the law prevented it from looking beyond the four corners of the motion to determine whether the motion had stated its grounds with sufficient particularity. While understandable, such a view of Rule 7(b)(1) is, in our view, disfavored.  'Overly technical' evaluations of particularity are disfavored ... Courts routinely take into consideration other closely filed pleadings to determine whether sufficient notice of the grounds for the motion are given and the opposing party has a fair opportunity to respond. ....

*Id.* at 760-761.

2.  <u>Court's Lack of Authority to Extend 10-Day Period</u>.

Citing Rule 6(b), Federal Rules of Civil Procedure, Plaintiffs contend that the Court lacked authority to extend the 10-day period applicable to the filing of post-judgment motions.

Rule 6(b) provides in pertinent part that the court "may not extend the time for taking any action under Rules 50(b) and ... 59 ...(e) ..., except to the extent and under the conditions stated in them."

However, Excel timely filed its "Notice of Motion and Renewed Motion for Judgment as a Matter of Law and To Alter or Amend Judgment".  The only pleading that was filed after the expiration of the 10-day period was its memorandum.  This is the same situation discussed by the First Circuit in *Cambridge Plating Co., Inc. v. Napco, Inc.*  Because Excel's Notice of Motion satisfies the particularity requirement of Rule 7(b),

11

1  Plaintiffs' contention that Excel's motion is untimely is without
2  merit.

3       **3.   <u>Untimely Filed Memorandum</u>.**

4       The December 22, 2006 Order granting Excel's application for
5  extension of time stated that "EXCEL shall have until January 15,
6  2007(OWW), within which to serve and file its pleadings in
7  support of any post-trial motions filed by EXCEL pursuant to Rule
8  59 of the Federal Rules of Civil Procedure" and that "NO FURTHER
9  EXTENSIONS WILL BE GRANTED".

10      Because Excel's memorandum was not filed until January 17,
11  2007, Plaintiffs argue that Excel's memorandum should not be
12  considered.[1]

13      Excel responds that its failure to file the memorandum on
14  January 15 as required by the Order was the result of excusable
15  neglect.   Excel notes that the docket entry states:

16           ORDER on <u>392</u> Ex Parte Application/motion for
             enlargement of time filed by Excel Realty
17           Partners.   Pleadings due by 1/16/2007.   Order
             signed by Judge Oliver W. Wanger on
18           12/21/2006.   (Timken, A.)(Entered:
             12/22/2006).
19
20  Because of this docket entry, Excel contends that it attempted,
    unsuccessfully, to file the memorandum on January 16, 2007.
21
22      Excel provides no declaration why it ignored the date stated

23  _____

24      [1]Plaintiffs contend that the computation process set forth in
    Rule 6 has no application because of the date certain stated in the
25  Order and also contend that the fact that January 15 was a Federal
    holiday is irrelevant because of electronic filing.   These issues
26  are not relevant given the discrepancy between the date in the
    Order and the date on the docket entry describing the Order.

                                    12

in the actual Order and instead refers to the date stated in the docket entry.  However, there is no explanation on the docket entry why the date in the Order was changed on the docket entry, i.e., typographical error or deliberate revision because January 15 was Martin Luther King's birthday, a Federal holiday.

With regard to the failure to file the memorandum on January 16, 2007, Excel submits the Declaration of Christopher N. Jones, one of Excel's attorneys located in Philadelphia, Pennsylvania. Mr. Jones avers in pertinent part:

> 3. I was primarily responsible for preparing and filing Excel's Memorandum in Support (docket #414).
>
> 4. At or about 8:27 p.m. (EST) on January 16, 2007, the final version of Excel's Memorandum in Support was completed and I converted the Microsoft Word version of the Memorandum in Support to an Adobe Acrobat document, titled "Rules 50-59 Motion - FINAL."
>
> 5. Shortly thereafter, I logged on to the Eastern District of California's ECF website, using my login name and password.
>
> 6. In the process of filing Excel's Memorandum in Support, I experienced difficulty attaching a copy of the Ground Lease at issue in this matter, apparently because of the file size. Attaching the Lease was the seventh step in a fourteen step process to file the Memorandum in Support.
>
> 7. Because of this difficulty, I had to log off of the ECF website several times and restart the process of filing the Memorandum in Support. On my fourth or fifth attempt, I successfully attached a copy of the Lease as exhibit "A." Each of my attempts took several minutes and each time I allowed approximately five (5) minutes for my computer to complete attaching the Ground Lease.

8. During the time that I waited for my computer to attach the ground lease and at other times when processing the filing of the Memorandum in Support was taking place, I proceeded to review other work-related matters.

9. When my computer successfully attached the Ground Lease as an exhibit to the Memorandum in Support, I proceeded to finish the steps necessary to file, including reviewing carefully the screen reflecting the name under which Excel's Memorandum in Support would be filed, which is the next to last screen.

10. Upon clicking the computer button that committed me to filing the Memorandum in Support under the name generated by the ECF system, I believed that the transaction was complete, and I shifted to another window on my computer as I waited to receive the email confirmation of filing.

11. A couple of minutes passed and I prepared to leave my office as the time approached 9:30 p.m. (EST). In my experience, the email confirmation is used *in lieu* of a certificate of service because it contains the names of all persons who received email notification of service and who are able to access the electronic document through PACER for free.

12. After gathering my things to leave, I checked my email and saw several emails from "caed_cmecf_helpdesk@caed.uscourts.gov", which signifies receipt of notice of filing, and assumed that one of those notices was Excels' Memorandum in Support. Those emails turned out to be notice of filing Excel's Motion for Attorneys Fees, Memorandum in Support, and the Declarations of Mark Kogan, Esq. and Steven Carroll, Esq., all of which were filed by Mr. Carroll. I received those emails between 7:54 p.m. and 8:13 p.m. and I had not previously reviewed them or noticed that I had received them.

13. The following day, January 17, 2004, during my lunch break, I clicked on a Microsoft Internet Explorer window that was

14

on the bottom of my computer screen. That
screen revealed the last screen necessary to
commit the transaction I thought I had
completed the night before. I attempted to
hit the "next" button on that screen, but
because of the passage of time was unable to
do so. I immediately checked the docket
online and my emails to discover that I had
not successfully filed Excel's Memorandum in
Support.

14. I then contacted the Court's Courtroom
Deputy, Greg Lucas and explained the above
and we discussed filing Excel's Memorandum in
Support and notifying Plaintiffs' counsel of
my error.

15. I then successfully filed Excel's
Memorandum in Support and, contemporaneously
therewith, notified Plaintiffs' counsel of my
error and requested that they contact me if
they had any concerns, which they did not do.

16. In between the time I thought I had filed
Excel's Memorandum in Support on January 16,
2007 and when I actually did so on January
17, 2007, neither I nor anyone else modified
the Memorandum in Support or the exhibits
thereto. The document that was filed on
January 17, 2007 was exactly the same at the
document I attempted to file on January 16,
2007.

Plaintiffs argue that Mr. Jones' declaration does not

demonstrate excusable neglect.  Plaintiffs refer to Rule 5-

134(c)(3), Local Rules of Practice:

Problems at the filer's end, such as phone
line problems, problems with the filer's
Internet Service Provider (ISP), or hardware
or software problems, will not constitute a
technical failure under these procedures nor
excuse an untimely filing.  A filer subject
to mandatory electronic filing who cannot
directly file a document electronically
because of a technical problem on the filer's
end must file the document electronically
from another computer or in portable
electronic format at the Clerk's Office.  If

15

> electronic filing is not possible in any
> form, the party may file a paper document
> with the Clerk, shall annotate on the cover
> page that electronic filing was not possible
> because of technical reasons, and shall file
> electronically as soon as possible.

Plaintiffs refer to an email from Mr. Jones to counsel for Plaintiffs on January 17 where Mr. Jones states that he "apparently neglected to hit the submit button on the last screen" in explaining the failure to actually file the Memorandum on January 16.  Plaintiffs contend that Mr. Jones' excuse "rings hollow, especially since it would be difficult to ignore or 'neglect' the submit button given the fact that the final page for the electronic filing submission protocol contains the word 'Attention' in red letters".  Finally, Plaintiffs argue that the failure to timely file the Memorandum is not excusable, given that Plaintiffs had ample time to do so.

The determination of whether neglect is "excusable" is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993).  Such circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay ... and whether the movant acted in good faith."  *Id.*  This list is not exhaustive.  *Id.*

Here, the failure to file the Memorandum was the result of excusable neglect.  Although Excel's attorneys should have reviewed the actual text of the December 22, 2006 Order rather

than relying on a docket entry describing the Order, it
nonetheless is the case that the docket entry was misleading and
inaccurate.  Further, Mr. Jones' declaration establishes that he
attempted to comply with what he thought was the filing date of
January 16, 2007 and only missed the date because he failed to
complete the technical steps required for electronic filing of
documents.  There is no evidence that Excel's attorneys
deliberately ignored the briefing schedule set forth in the
December 22, 2006 Order and there is no suggestion of prejudice
to Plaintiffs or the Court because of the untimely filing of the
Memorandum by Excel.

Plaintiffs' objections to consideration of the Excel's
motion and its supporting memorandum are OVERRULED.

B.  **Renewed Motion for Judgment as a Matter of Law and To
Alter or Amend Judgment**.

1.  **Governing Standards**.

The standards governing a motion for judgment as a matter of
law pursuant to Rule 50, Federal Rules of Civil Procedure, are
reiterated in *Gibson v. City of Cranston*, 37 F.3d 731, 735 (9th
Cir.1994):

> When confronted with a motion for judgment as
> a matter of law, whether at the end of the
> plaintiff's case or at the close of all the
> evidence, a trial court must scrutinize the
> proof and the inferences reasonably to be
> drawn therefrom in the light most amiable to
> the nonmovant ... In the process, the court
> may not consider the credibility of
> witnesses, resolve conflicts in testimony, or
> evaluate the weight of evidence ... A
> judgment as a matter of law may be granted

17

> only if the evidence, viewed from the
> perspective most favorable to the nonmovant,
> is so one-sided that the movant is plainly
> entitled to judgment, for reasonable minds
> could not differ in the outcome ....

Further, a party cannot raise arguments in a post-trial motion for judgment as a matter of law that it did not raise in its pre-verdict motion. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir.2003).

With regard to a motion to alter or amend judgment pursuant to Rule 59(e), Federal Rules of Civil Procedure, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1, explains:

> Since specific grounds for a motion to amend
> or alter are not listed in the rule, the
> district court enjoys considerable discretion
> in granting or denying the motion.  However,
> reconsideration of a judgment after its entry
> is an extraordinary remedy which should be
> used sparingly.  There are four basic grounds
> upon which a Rule 59(e) motion may be
> granted.  First, the movant may demonstrate
> that the motion is necessary to correct
> manifest errors of law or fact upon which the
> judgment is based.  Second, the motion may be
> granted so that the movant may present newly
> discovered or previously unavailable
> evidence.  Third, the motion will be granted
> if necessary to prevent manifest injustice.
> Serious misconduct of counsel may justify
> relief under this theory.  Fourth, a Rule
> 59(e) motion may be justified by an
> intervening change in controlling law.
>
> The Rule 59(e) motion may not be used to
> relitigate old matters, or to raise arguments
> or present evidence that could have been
> raised prior to the entry of judgment.  Also,
> amendment of the judgment will be denied if
> it would serve no useful purpose. [Footnotes
> omitted]

18

2.   <u>Procedural Background</u>.

With the exception of Excel's contention that the court erred in awarding to Plaintiffs the cost of equipment, opening inventory, training, and interest because all of these amounts are unrecoverable business losses, every ground asserted in Excel's motion for judgment as a matter of law or to alter or amend the judgment has been previously raised by Excel and ruled on in numerous post-jury trial proceedings.  The procedural background to these proceedings and the rulings on the various issues are set forth in: (a) "Order Re: Post Trial Election of Remedies; Defendants' Claimed Rescission Waiver Clause; Defendants' Claimed Damage Limitation Clause" filed on November 19, 2004 (hereafter November 19, 2004 Order)(Doc. 353); (b) "Memorandum Decision and Order Re Post-Trial Election of Remedies" filed on September 30, 2005 (hereafter September 30, 2005 Order)(Doc. 362); and (c) "Memorandum Decision Re Rescission Damages and Availability of Prejudgment Interest" filed on November 14, 2006 (hereafter November 14, 2006 Order)(Doc. 387).

3.   <u>No Useful Purpose/Advisory Opinions</u>.

Plaintiffs oppose Excel's motion to the extent that it complains that the jury's findings that the Four Seasons restaurant caused the Golden Corral restaurant to close or caused damages to Plaintiffs; that there was a material breach of the Ground Lease; and that Plaintiffs were constructively evicted from the demised premises.  Plaintiffs argue that these grounds for relief are "no longer of any moment in this case in light of

19

Plaintiffs' election of the remedy of rescission." Plaintiffs argue that these issues are moot in the Article III sense because there is no longer any case or controversy and that Excel is requesting advisory opinions with respect to these issues.

Excel opposes Plaintiffs' position, contending that these issues are not moot. Excel refers to the ruling in the September 30, 2005 Order that the right to rescission was established by the jury's finding that the Ground Lease had been materially breached. (Doc. 362, pp. 7-15). Excel further contends that "if the Court grants judgment to Excel on Plaintiffs' rescission claim (or the Court of Appeals overturns the award of rescission), the jury's verdict respecting constructive eviction may be a focal point of this case." Excel argues that there is no reason to fragment review of these issues by this Court or the Court of Appeals.

For the reasons stated by Excel, resolution of these issues is not moot in the sense that advisory opinions will be issued in resolving Excel's motion.

**4.** **No Legally Sufficient Basis for Jury to Find that the Four Seasons Restaurant Caused the Golden Corral Restaurant to Close or Caused Damages to Plaintiffs; and No Legally Sufficient Basis for Jury to Find Material Breach of Ground Lease.**

Assuming that these issues are properly raised in Excel's motion, *see discussion supra*, Excel argues that the damages claimed by Plaintiffs for the closure of the Golden Corral

restaurant and lost future profits were not caused by Excel's

breach of the ground lease.  Excel contends that Plaintiffs'

damages were caused by their decision to cease their business in

furtherance of their own business agenda.  Excel argues that

there was no proof that any damages flowed from the breach

alleged and that the only evidence Plaintiffs presented was that

"as many as 20 customers ... had tried the Four Seasons ...."

(Tr. 1403:9-10).  Excel, referring to its Motion in Limine to

Exclude the Expert Report and Testimony of Robert G. Wallace,

Doc. 204), asserts that there was no evidence that any loss of

business was caused by the Four Seasons restaurant and no proof

that the Four Seasons restaurant caused the Golden Corral to

close.  Excel asserts: "The flimsy and indefinite evidence

adduced by Plaintiffs is entirely insufficient to support the

jury finding of material breach, and certainly provides no basis

for a finding of a material failure of consideration justifying

rescission."  Excel further refers to the hearing on its pre-

verdict Rule 50 motion wherein Excel contends that the Court

observed that Plaintiffs had failed to establish causation and

proof of damages:

> THE COURT: ... I will grant you that what I
> had expected to see, and it's like, to use
> the fast food analogy, where's the beef?  I
> kept waiting to hear somebody give a - some
> kind of analysis of the Fours [sic] Seasons
> sales, and then plug that, if you will,
> diversion, if you could say that 95 percent
> of it or whatever percentage of it was
> attributable to its existence there and would
> have taken Golden Corral sales, and then plug
> that into - in other words, add that income

> back to the profit and loss and say, now,
> with that income over the 20-month period,
> this would have made the difference in Golden
> Corral Modesto.
>
> MR. CARROLL: That causal link isn't there.
>
> THE COURT: We didn't hear it.

(Tr. 1407:19-1408:6).  Excel refers to *Postal Instant Press, Inc.*
*v. Sealy*, 43 Cal.App.4th 1704 (1996), in arguing that the absence
of causation evidence is fatal to Plaintiffs' claims:

> In *Postal*, it was the franchisor's own
> decision to terminate that caused the losses
> complained of, not the breach by the
> franchisee.  Likewise, here, it was Mr.
> Reiche's decision to close the Golden Corral,
> not the operation of the Four Seasons that
> caused the losses complained of.

Plaintiffs argue that Excel's pre-verdict Rule 50 motion did
not assert insufficiency of the evidence that the breach was
material.

However, as Excel responds, it explicitly "moved for
judgment because of the absence of adequate evidence to support
causation and damages, the sufficiency of which is at the heart
of materiality."

Plaintiffs further respond that substantial evidence
supports the jury's finding that Excel's breach of the exclusive
use provision was a material breach.  Plaintiffs refer to the
testimony of Marvin Reiche that the exclusive use provision was
material in deciding to enter into the Lease; to evidence that
Plaintiffs were not willing to obtain a loan, invest over $2
million to build the restaurant, and enter into a 15-year lease

22

without the exclusive use provision; and to Bi Wen Liu's testimony that the Four Seasons was a buffet restaurant.

Citing *Kulawitz v. Pacific Etc. Paper Co.*, 25 Cal.2d 664, 672 (1944)("A covenant not to let other premises in the lessor's property or permit their use for certain purposes during the existence of the lease with the covenantee is binding and a breach thereof entitles the lessee to terminate the lease"), Plaintiffs assert that the jury's finding that Excel's breach of the exclusive use provision was a material breach is supported by the evidence and the law.

Plaintiffs also contend that they offered evidence at trial that the breach of the exclusive use provision caused Plaintiffs' damages.  They refer to evidence that, with the opening of the Four Seasons, sales dropped at the Golden Corral; the testimony of Brad Reiche that at least five of the Golden Corral's customers went to the Four Seasons and that he had talked to 20 or more customers who had tried the Four Seasons; and the testimony of Excel's expert, Mr. Fletcher, that the Four Seasons did about $400,000 in sales and that the opening of the Four Seasons had an adverse impact on the Golden Corral.  Plaintiffs contend that there should not have been even one lost sale to a competing restaurant in the shopping center and that every lost sale arising from the diversion of business to the Four Seasons caused damage to the Plaintiffs.

Plaintiffs further argue that Excel misconstrues the Plaintiffs' burden where the Plaintiffs have elected rescission:

1
2
3
4
5
6
7
8
9

> Rather than focusing on the breach and the causal effect of the breach, rescission damages are awarded only after a basis for rescinding the contract has been established. Damages for rescission are not awarded based upon a finding of a causal relationship to the breach which justified rescission. Rather, damages for rescission are awarded by unwinding the contract and by reimbursing the aggrieved party for expenses incurred in reliance on the rescinded contract.  Thus, the inquiry is not the causal relationship between Defendant's breach, and Plaintiffs' damages associated with the closure of the restaurant.  The inquiry, rather, is the relationship between the Plaintiffs' expenditures, and its reliance on the rescinded contract.

10
11
12
13
14

Plaintiffs further note that Excel argued at trial that its breach did not result in the damages claimed by Plaintiffs and, therefore, it is likely that the jury substantially reduced the amount of damages awarded to Plaintiffs.

15
16
17
18
19
20
21
22
23
24

Excel responds that Plaintiffs' evidence demonstrates that approximately twenty-five people who had eaten at the Golden Corral also ate at the Four Seasons on a separate occasion and contend that Plaintiffs presented no evidence that anyone ate at the Four Seasons instead of the Golden Corral.  Excel argues that, viewing the evidence in the light most favorable to Plaintiffs and assuming a 100% diversion of the twenty-five customers from the Golden Corral to the Four Seasons, Plaintiffs' evidence of damages would amount to $250 to $500, and contends: "Such a small impact cannot support a finding of material breach or an entitlement to rescission."

25
26

This argument was made at trial to the jury, for judgment as

1  a matter of law and in post-trial proceedings.  In the September

2  30, 2005 Order, the Court addressed whether rescission is

3  warranted based on the jury's finding of a material breach and

4  ruled in pertinent part:

> Plaintiffs argue rescission of the Lease is warranted because the jury found Defendant's breach of the exclusive-use provision (§ 6.3) was a material breach.  (See Doc. 280, Verdict, Interrogatories 2, 3) Defendant argues rescission of the Lease is not warranted because the exclusive-use provision is an independent covenant, and that, as a matter of law, breach of an independent covenant does not warrant rescission. Defendant impliedly argues that the jury's finding that the breach was material is insufficient grounds to entitle Plaintiffs to the remedy of rescission or is not supported by substantial evidence.

> The Lease was for a site that would be exclusively used for a buffet restaurant at Defendants' [sic] shopping center. Plaintiffs established they were not willing to invest two million dollars to build a restaurant and to commit to a fifteen (15) year term lease without an exclusive use lease contract.  Plaintiffs bargained to be the sole and exclusive buffet restaurant in the center.  Defendant's position abdicates that jury's materiality finding.  Defendant's argument is reasonably construed as another argument to support a Rule 50(b) renewed motion for judgment as a matter of law. Defendant has made no such motion.  Even if Defendant had properly brought such a motion, Defendant's argument still fails.

The essence of the lease was to have an exclusive site for a buffet restaurant.  Excel wrongfully denied Plaintiffs this benefit of the lease.  Pursuant to the standards governing resolution of Excel's motion, the motion on this ground is DENIED.

**5.   Court Erred (a) In Granting Plaintiffs' Claim for Rescission of the Ground Lease; (b) In Holding that the Jury's Finding of a Material Breach of the Ground Lease Constituted a Finding of a Material Failure of Consideration or Otherwise Properly Supported Plaintiffs' Claims for Rescission; and (c) In Holding that the Breach of § 6.3 of the Ground Lease, an Independent Covenant, Constituted a Material Failure of Consideration, Sufficient to Justify Rescission.**

In this section of Excel's motion, Excel contends that for the reasons set forth in the instant Memorandum "and in Excel's memoranda filed March 12, 2004 (docket # 314, pp.6-7) and April 4, 2005 (docket # 360, pp. 3-8), Excel respectfully submits that the Court should not have granted rescission of the Ground Lease to Plaintiffs." Once a material breach was found by the jury, Plaintiff was entitled to elect the remedy of rescission.

All of these grounds have been argued unsuccessfully and fully treated in prior proceedings. *See* September 30, 2005 Order, pp. 7-15. Consequently, Excel's motion on these grounds is DENIED.

**6.   Court Erred in Holding that Doctrine of Judicial Estoppel Applies to Estop Excel from Asserting § 4.5 of the Ground Lease as a Bar to Rescission.**

The November 19, 2004 Order, pages 51-53, ruled that Excel was judicially estopped from raising § 4.5 of the Ground Lease as a bar to a rescission remedy. In the September 30, 2005 Order, pages 15-19, Excel argued unsuccessfully that the application of

26

judicial estoppel to bar Excel from raising § 4.5 as a bar to a
rescission remedy was "prejudicial error".

Excel again argues that the Court erred in holding that the
doctrine of judicial estoppel precluded Excel from asserting §
4.5 of the Ground Lease as a bar to rescission.  Excel
incorporates all of its prior arguments and asserts that "the
following is intended to summarize the principal components of
Excel's arguments rather than to restate them *in extensio*."

No new facts or law are provided.  The issue was fully
analyzed.  The ruling remains the same and Excel's motion on this
ground is DENIED.

7.  <u>No Legally Sufficient Basis for the Jury's Finding
That Plaintiffs' Were Constructively Evicted from Demised
Premises</u>.

On November 26, 2003, at the close of Plaintiffs' case
during the jury trial, Excel moved for judgment as a matter of
law with regard to Plaintiffs' claim of constructive eviction and
argument was held on that motion.  Doc. 335, Tr., pp. 1415-1417,
1419-1431, 1437-1439.  At the close of that hearing, Plaintiffs
were given the opportunity to submit additional authorities on
the issue of constructive eviction.  *Id.* at 1451.  However, there
is no indication on the docket that Plaintiffs filed any
additional authorities.  On December 2, 2003, in the context of
discussing jury instructions, the parties and the court again
addressed the issue of constructive eviction.  Doc. 313, Tr., pp.
52-61.  The Court then took the motion for judgment as a matter

of law on the issue of constructive eviction under submission, pending the jury's verdicts. *Id.*, pp. 61-62, 83. However, there is no record that the Court actually ruled on Excel's Rule 50 motion on the issue of constructive eviction. The jury was instructed on constructive eviction. *Id.,* pp. 94-95. During deliberations, the jury asked a question about the term "surrender" in the constructive eviction instructions. Doc. 337, Tr., pp. 1669-1670, 1672-1674. In the jury verdict, the jury found in pertinent part as follows:

> Did defendant's material breach of the lease agreement constitute a constructive eviction? Yes.

> Did plaintiff, upon any material breach of the lease that constituted a constructive eviction, surrender the premises to the defendant lessor? Yes.

*Id.*, p. 1677. In practical effect, it is not necessary to upset the jury's verdict on constructive eviction, as it did not result in any damages to Plaintiffs and, they elected to pursue rescission, which was fully justified on separate and independent grounds.

Excel's motion on this ground is DENIED.

8. **Court's Award of Consequential Damages in Connection with Plaintiffs' Rescission Claim Violated Seventh Amendment**.

Excel refers to the portion of the November 19, 2004 Order, page 26, which ruled in pertinent part:

> *Chauffeurs* makes it clear that there are two exceptions to the rule that the recovery of

28

money damages is legal for which a right to
jury trial exists; restitution and an award
incidental or intertwined with injunctive
relief. *Chauffeurs, Teamsters & Helpers,
Local No. 391 v. Terry*, 494 U.S. 558, 570-571
(1990).  Plaintiffs have failed to present
any convincing case law supporting their
assertion that the consequential damages
sought in this case fall under this category.

However, Excel contends, the Court in the "Memorandum Decision Re

Rescission Damages and Availability of Prejudgment Interest"

filed on November 14, 2006 (hereafter the November 14, 2006

Order), (Doc. 387), awarded consequential damages to Plaintiffs

in the following amounts:

Equipment Expenditures - $589,271

Opening Inventory for Restaurant - $30,000

Franchise Fee - $30,000

Training of Modesto Staff - $18,749

Construction Interest - $27,956

Interest Paid After Opening - $186,394.

Excel contends that "[f]or the reasons set forth above and in

Excel's memoranda filed January 26, 2004 (docket #301, pp.16-18),

March 12, 2004 (docket #314, pp. 4-6), June 17, 2004 (docket #

342, pp. 1-7), June 30, 2004 (docket #344, pp.17-20), and April

4, 2005 (docket #360, 13-21 [sic]), Excel respectfully submits

that the Court should not have determined the amount of

consequential damages and awarded such damages to Plaintiffs

...."

     The September 30, 2005 Order, in the context of addressing

the types of rescission damages that may be recovered, noted at

29

pages 21-22 n.5 in pertinent part:

> The analysis of 'consequential' versus 'incidental' damages in the November [14,] 2004 Order was related to the question whether Defendants had a Seventh Amendment right to a jury trial on the issue of rescission damages.  The Seventh Amendment right to a jury trial, unlike the measure of damages, is a question of federal law.  In diversity cases, when a party's Seventh Amendment right to a jury trial is contingent upon whether the relief to be awarded is legal or equitable in nature, the court turns to federal law to characterize the remedy as one or the other.  *Simler v. Conner*, 372 U.S. 221, 222 (1963); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1026-7 (9th Cir.1996).  The November [14,] 2004 Order therefore looked to federal law to determine whether the remedy sought was legal or equitable in nature.

> The Seventh Amendment right to a jury is no longer at issue.  The distinction between damages defined as 'consequential' or 'incidental' under federal law is not relevant to the issue of the measure of damages based on rescission under California law. [California Civil Code S]ection 1692 governs and Section 1692 provides for 'consequential' damages as interpreted by California case law.  In a diversity case, the issue of measure of damages is one of substantive law as governed by the law of the forum state.  *Clausen v. M/V NEW CARISSA,* 339 F.3d 1049, 1064-65 (9th Cir.2003)(citing *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 ... (1989) ('In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of ... damages for the conduct in question ... [is a] question [] of state law.')).

The September 30, 2005 Order further examined the California law of rescission damages and determined that California law governs the restitutionary remedy of consequential rescission

damages.

Pursuant to the standards governing resolution of Excel's motion, Excel's motion on this ground is DENIED.

9. <u>Court Erred (a) In Holding that Ground Lease Is *Prima Facie* Evidence of Fair Rental Value of the Leasehold with Improvements; (b) In Calculating Credit to Which Excel Was Entitled; and (c) In Holding that Excel Was Not Entitled to Equitable Adjustment for Reasonable Rental Value of Demised Premises, As Improved.</u>

In the September 30, 2005 Order, pages 29-30, the Court addressed Excel's contention that it is entitled to an equitable adjustment of the monthly rent based on the fair market value of the building. Excel argued that it was entitled to an off-set for the reasonable rental value of the land while it was in Plaintiffs' possession, taking into account the increased value of the property with the restaurant that Plaintiffs' built, relying on *Kent v. Clark*, 20 Cal.2d 779, 785 (1942), and *Runyon v. Pacific Air Indus., Inc.,* 2 Cal.3d 304, 315 (1970). The Court ruled in pertinent part:

> The more equitable result here is to prevent Defendant from benefitting from Plaintiffs' efforts and expenditures in improving the land. Plaintiffs invested over two million dollars to build their Restaurant [sic] in reliance on the Lease that Defendants [sic] later breached. Defendants [sic] should not benefit from their breach by an enhanced off-set for the rental value of improvements that Plaintiffs funded. The Lease is prima facie evidence of the fair rental value of the leasehold with improvements.

31

1    In the instant motion, Excel, incorporating "portions of its

2 memorandum filed April 4, 2005 (docket #360, pp.22-24),

3 essentially argues that the conclusion in the September 30, 2005

4 Order is wrong, based on *Kent* and *Runyon.*

5    Excel further contends that the Court awarded Plaintiffs the

6 cost of constructing the building and improvements and asserts:

7           **The effect of the Court's award is to**
            **eliminate the cost of the improvements from**
8           **Flagship's side of the economic ledger.**
            **However, Flagship is not *also* entitled to use**
9           **the improved premises at a ground lease**
            **rental which presupposed that Flagship had in**
10          **fact paid for the improvements.  Accordingly,**
            **establishing the rental credit by reference**
11          **to the ground lease rental is, [sic]**
            **inequitable and results in an unfair windfall**
12          **to Plaintiffs.  Instead, Excel should receive**
            **a credit to reflect the fair rent for the**
13          **premises as improved.**

14    All of these grounds have been previously considered or

15 could have been raised previously.  Excel's motion on this ground

16 is DENIED.

17        10.  **The Court Erred in Holding Plaintiffs Were**

18 **Entitled to Recover as Consequential Damages the Original Cost of**

19 **Plaintiffs' Used Equipment in the Amount of $589,271, Which**

20 **Plaintiffs Disposed Of For $11,260**.

21    In the November 14, 2006 Order, pages 9, 24, the Court ruled

22 in pertinent part:

23          **Plaintiffs seek $589,782 for expenditures on**
            **restaurant equipment.  Defendants assert only**
24          **$581,526 is documented in the record, leaving**
            **$17,256 unaccounted for.**
25
            **An invoice from the Coastal Equipment Company**
26          **indicates a total balance due of $589,272 for**

equipment.  (JTE 181 0133.)  Although the
invoice reflects that only $581,526 had been
paid as of the invoice date, there was
testimony from Ms. Meyers that all bills were
paid in full (Tr. at 1491), and no evidence
to the contrary.

Plaintiffs' higher $589,782 figure is based
on Wallace's testimony.  (Tr. at 924:16)
Wallace testified he reached this number by
examining the financial records of the
company.  His calculation was not challenged
in substance during the trial.  However,
again, under Federal Rule of Evidence 1006,
underlying records were not provided to
support the higher figure.  (*See* JTE 181.)
It is most reasonable to award Plaintiffs the
lower, but better-documented <u>$589,271</u> in
rescission damages for equipment, less any
offset for salvage.  *See* Part III.E

...

It also appears undisputed that Excel is
entitled to a $11,260 credit to account for
the funds collected after Flagship's
equipment was sold at auction.  Excel seeks
an additional credit for the full <u>cost</u> of the
equipment, asserting that The Money Store
forced Plaintiffs to sell the equipment at a
'commercially unreasonable firesale.'  Excel,
however, cites absolutely no legal authority
to support this assertion.

Excel shall receive only a <u>$11,260</u> credit for
the funds collected after the auction.

Excel, incorporating "its memoranda filed June 30, 2004
(docket #344, pp. 21-24) and April 4, 2005 (docket #360, p.19),
argues that the only evidence of the equipment's value is that
established at the auction, i.e., $11,260.  Excel further argues
that, because the equipment was sold pursuant to Plaintiffs'
agreement with the lender, "any loss or sacrifice occasioned by
that transaction has nothing to do with Excel."

33

1    Excel's motion is GRANTED to the extent the November 14,
2    2006 Order states: "It is most reasonable to award Plaintiffs the
3    lower, but better-documented <u>$589,271</u> in rescission damages for
4    equipment, less any offset for salvage."  The Court intended to
5    award $581,526 in rescission damages for equipment, less any
6    offset [the $11,260.00] for salvage."  The November 14, 2004
7    Order should have stated: "It is most reasonable to award
8    Plaintiffs the lower, but better-documented <u>$581,526</u> in
9    rescission damages for equipment, less any offset for salvage."

10    However, in all other respects, Excel's motion is DENIED.
11    All of Excel's arguments have been previously considered and
12    rejected.

13    **11.  <u>The Court Erred In Failing to Hold That, in</u>**
14    <u>**Rescission, the Cost of Plaintiffs' Used Equipment, Opening**</u>
15    <u>**Inventory, Training, and Interest Were Unrecoverable Business**</u>
16    <u>**Losses**</u>.

17    In the November 14, 2006 Order, pages 21-23, the Court held
18    that Plaintiffs were not entitled to recover $186,903 in
19    "business losses".  Excel has no quarrel with this ruling.

20    However, Excel contends that the court erred in awarding to
21    Plaintiffs the cost of equipment, opening inventory, training
22    expenses, and interest because all of these amounts are
23    unrecoverable business losses:

24                    The costs of the equipment, and the cost to
                      use it, are properly regarded as the costs of
25                    doing business that resulted in unrecoverable
                      business losses.  Pursuant to well-recognized
26                    accounting rules, equipment is depreciated

34

over time to reflect the loss of value of the
equipment and to reflect that loss as an
expense in the business's operations.
Therefore, the $570,266 difference between
the equipment cost ($581,526) and its
eventual resale value ($11,260) is a business
loss, which not [sic] properly awardable in
rescission.

Likewise, the other elements of consequential
damages awarded by the Court are part of
Plaintiffs' business losses, which are
inappropriate in rescission.  The opening
inventory ($30,000), franchise fee ($30,000),
training of Modesto staff ($18,749), and
interest expense ($27,956 construction and
$186,394 paid after opening) are costs of
doing business.  Such business losses are not
consequent to the Ground Lease.  (*See also*,
Excel's memorandum filed February 13, 2006,
docket #371, pp. 8-10).  As the Court
correctly noted, 'Plaintiffs expectation of
recouping their operating losses over time is
a benefit of the bargain that can only be
classified as a form of contract damages.'
(11/14/06 Order, p. 23:6-9).  This rule
should be applied uniformly to all components
of Plaintiffs' claimed business operating
expense.

Plaintiffs object to this ground for relief.

First, Plaintiffs note that the Notice of Motion filed on

December 29, 2006 only states in pertinent part:

14.  The Court erred in failing to hold that,
in rescission, the cost of Plaintiffs' used
equipment was an unrecoverable business loss
....

Plaintiffs complain that Excel's Memorandum, asserted by

Plaintiffs to be untimely, now expands this ground by including

the other items noted above.

However, because of the conclusion that Excel's motion and

memorandum are timely, *see discussion supra,* this objection is

35

overruled.

Secondly, Plaintiffs object that Excel's contentions have not been previously raised and could have been raised prior to the hearing on March 14, 2006 on the amount of rescission and consequential damages to be awarded or in the post-hearing briefing ordered by the court.

Excel's motion to alter or amend the judgment on this ground is DENIED, because the Court ultimately found that these expenses were a necessary consequence of entering into the lease and would not have been incurred but for the material breach by Excel.  *See Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000)("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

        12.  <u>The Court Erred in Holding that There Was Legally Sufficient Evidence to Award $1,239,030 for Construction Cost</u>.

Excel contends that the award to Plaintiffs of $1,239,030 for construction costs is error on several grounds:

> (a) To the extent  there was evidence of these costs, the construction costs totaled no more than $1,096,978; JT 181 is hearsay and, even if considered, establishes only that $1,096,978 was paid;
>
> (b) The testimony of Plaintiffs' expert, Mr. Wallace, and his pie charts are no substitute for actual evidence that monies were in fact paid;
>
> (c) The testimony of Plaintiffs' bookkeeper, Ms. Myers, is legally insufficient because it related to payment of vendors and Ms. Myers did not testify regarding JT 157.

36

In addition to the arguments presented in the Memorandum in support of this motion, Excel incorporates "the pertinent parts of its memorandum filed with this Court on February 13, 2006 (docket #371, pp.1-3).

In the November 14, 2006 Order, pages 5-8 the award of construction costs to Plaintiffs was analyzed:

> Plaintiffs seek $1,270,252 for the cost of construction. Defendants asserts that only $1,096,978 of this is reflected in the trial record.

> To support the higher figure, Plaintiffs cite the testimony of expert Rob Wallace (Trial Transcript ("Tr.") at 924) and Joint Trial Exhibit ("JTE") 157. Defendants assert that JTE 181 is also relevant.

> Defendants make three objections to the evidence offered by Plaintiffs. First, Defendants object to the consideration of Mr. Wallace's testimony as evidence on the issue of damages. Mr. Wallace, who was called as an expert on financial matters, examined Flagship's financial records and testified, using a series of pie charts, as to the total investment made by Plaintiffs in the Golden Corral restaurant, including his estimate that $1,270,252 was spent on construction. The pie charts were admitted into evidence as Plaintiffs' Exhibit ("PE") 58. Defendants object that Wallace's testimony is hearsay on the issue of damages, because Wallace had no firsthand knowledge of any of the alleged construction expenses to which he testified. Defendants point to statements Plaintiffs' counsel, Mr. Fairbrook, made during the trial that, at first glance, appear to have disclaimed any right to cite Wallace's testimony pie charts as evidence of damages:

> > MR. FAIRBROOK: I might be able to shortcut this a little bit because I think what Mr. Carroll is concerned about is those pie charts that showed the total investment of

1

2

3

about $3.5 million. I will not
argue that that is a measure of
damage. I will not argue that that
is the amount that should be
recovered.

4

5

6

7

That is evidence in the case. It
shows a compilation of various
expenses, it shows the investment.
It serves to test some of the
reasonableness of some of the other
calculations.

8

9

10

11

With respect to our special damages
and the recoupment of our losses
and investments, those will be done
specifically item by item, cost by
cost, and it does not equal that
total number of those pie charts,
so I will not be arguing that that
equates to our damages.

12

13

14

15

16

17

18

19

20

21

22

23

24

(Tr. at 1517:1-15.)  However, Defendants
quote Plaintiffs' counsel out of context.
The above-quoted statement was made in the
context of crafting the jury instructions
regarding contract damages.  There was a
lengthy discussion between the parties and
the district court concerning the appropriate
measure for contract damages and whether Mr.
Wallace's various analyses could be
referenced as evidence of contract damages.
(Tr. at 1462-1472.)  In fact, counsel for
Defendants specifically argued that one of
Wallace's assertions was that "every single
dime that has ever been inserted into this
business should somehow be given back because
there has been a purported breach of
contract."  (Tr. at 1470:14-15.)  This,
Defendants asserted, was relevant only to
"rescission."  (Id.; Tr. at 1516.)  In
response, Plaintiffs' counsel eventually
conceded that he would not argue that
Wallace's estimates were evidence of contract
damages.  Now, however, it is entirely proper
for Plaintiffs to utilize Wallace's estimates
as evidence of rescission damages.
Defendants themselves acknowledged as much.

25

26

Wallace specifically testified that
$1,270,252 was spent on construction.  (Tr.

at 924:15.) Defendants present no directly
contrary evidence. He is both a CPA and a
financial analyst. He was entitled and
qualified to review and prepare a
compilation, summary, or abstract of
construction and business expenses from
Flagship's underlying accounting and business
records.

Even if Wallace's testimony was inadmissible,
JTE 157 enumerates that $1,239,030 was spent
on the "building." Defendants object to
reliance on JTE 157, a one-page summary
document that explains that $1,239,030 was
spent on the "building." Mr. Reiche
testified that JTE 157 was prepared by
Flagship's bookkeeper Lynn Myers. (Tr. at
599.) Defendants object that Mr. Reiche was
not qualified to provide any foundation as to
payments described in JTE 157. Ms. Myers,
the author of the document, testified at
trial, but she did not provide any foundation
for JTE 157. However, the exhibit was
admitted into evidence without objection
through Mr. Reiche (Tr. at 599), who was
consulted whenever bills were paid, so it may
be relied upon.

JTE 181 provides further support for
Wallace's estimate. Page 124 of JTE 181 is
an invoice from Flagship's general
contractor, indicating the total cost of
construction of the restaurant as of June 24,
1999 was $1,239,030. Defendants point out
that the invoice indicates that only
$1,096,978 was paid by Flagship as of the
date of that invoice (i.e., a balance of just
over $142,000 was due). However, there was
general testimony from Ms. Meyers suggesting
that, with the exception of interest due on
the Money Store loan after Flagship defaulted
on the loan, Flagship paid all of its bills
that were actually due (i.e., those bills
that were not disputed or disputable in some
way). (Tr. at 1491:19-20; 1494-96.)
Defendants present no evidence to the
contrary.[3]

There is an unexplained discrepancy between
Wallace's estimate that $1,270,252 was spent
on construction and the $1,239,030 figure

1   provided on both JTE 157 and JTE 181.
    Although Wallace explained that his estimate
2   was based upon his review of the company's
    financial records and his calculation was not
3   challenged in substance during the trial, JTE
    157 was prepared by Lynn Meyers, Flagship's
4   own bookkeeper, based upon Flagship's records
    of which she had personal knowledge.   There
5   is no specific evidence to support Wallace's
    higher damages figure.  Plaintiffs will be
6   awarded $1,239,030 in rescission damages for
    construction costs incurred, as documented on
7   Flagship's own summary and confirmed by the
    contractor invoice.

8   ...

9   [3]Defendants also argue that the invoices
    contained within JTE are hearsay.  But, it
10  does not appear that Defendants raised this
    objection (at least not successfully) during
11  trial.  The exhibit was admitted in to
    evidence and is part of the record and is
12  appropriately referenced in calculating
    rescission damages.  It was a business record
13  of Flagship's and Defendants did not dispute
    its authenticity as a contractor invoice.
14

15      Excel's motion merely seeks to re-argue issues that have

16  already been briefed and fully considered in the November 14,

17  2006 Order and is DENIED

18                          CONCLUSION

19      For the reasons set forth above,

20      1.   Excel Realty Partners, L.P.'s Renewed Motion for

21  Judgment as a Matter of Law and Motion to Alter or Amend Judgment

22  is GRANTED IN PART AND DENIED IN PART.

23      2.   Paragraph 2 of the Judgment entered on December 14, 2006

24  is AMENDED as follows:

25          2. Plaintiffs FLAGSHIP WEST LLC, MARVIN G.

26          REICHE, and KATHLEEN REICHE, and each of

                              40

them, are awarded $2,590,406 for damages in
rescission and consequential damages
resulting from Defendants' breach of
contract, minus credits due Defendants in the
amount of $455,976, and therefore shall
recover from Defendants, EXCEL REALTY
PARTNERS L.P., in the amount of $2,134,430.

IT IS SO ORDERED.

Dated:     May 29, 2007                          /s/ Oliver W. Wanger
                                         UNITED STATES DISTRICT JUDGE